**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **JOHN DOE,**<br>**Plaintiff,**<br><br>**v.**<br><br>**THE TRUSTEES OF INDIANA UNIVERSITY, *et al.***<br><br>**Defendants.** | **Civ. No. 1:20-CV-02006-JRS-MJD** |

**PLAINTIFF JOHN DOE'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff John Doe submits this reply brief in further support of his Motion for Preliminary Injunction. Defendants cannot dispute that Doe was expelled from Indiana University School of Medicine ("IUSM") on June 16, 2020 without any notice regarding the alleged conduct leading to such expulsion, and without any opportunity to defend himself. Consequently, Defendants spend their recitation of facts attempting to redirect the Court's attention from the procedural violations they committed, in an effort to impugn the Plaintiff's character, and disparage him in the eyes of the Court. Putting aside their ad hominem attack on Plaintiff Doe, Defendants tactic does not deflect from their bad acts. Defendants subjected Plaintiff to a procedure replete with violations of the University's own stated policies and a lack of fundamental fairness. For the reasons addressed in his amended brief, and as further described herein, Plaintiff meets the requirements for a preliminary injunction.

## I. Argument in Reply

### *A. Irreparable Harm*

Plaintiff satisfies the first element of a motion for preliminary injunction, as he will suffer irreparable harm if the requested relief is not granted. First, Defendants argue that the "six-year rule"

is "not rigid" and could be waived at a later time if a court ordered Doe be reinstated to IUSM. Defendants' argument is disingenuous. Even if the six-year rule could be waived at some unknown point in the future, after this case is concluded, there is no question that Doe would be irreparably harmed by his inability to obtain a residency match. As one of the largest medical schools in the country, Defendants are well aware of the implications an even greater gap would have on Doe's residency applications. Even if, years from now, Defendants decided to waive the six-year rule, or decided to change their minds of the promise to do so now, it would do nothing to alter the clear fact that Doe would almost certainly be denied a residency match. This is beyond question, and Defendants are almost certainly aware of this.

Second, Doe's inability to transfer to a comparable institution is indeed relevant to an irreparable harm analysis. The likely impossibility of Doe gaining admission as a transfer student to another medical school highlights the harm suffered absent the requested relief, as he will be unable to pursue his medical education, at either IUSM or elsewhere, if he is not immediately reinstated to IUSM. (Doe Aff. at 8, ¶ 24, ECF No. 88-1, Ex. 1000); (Miller Aff. at 7, ¶ 18-20, ECF No. 73-1, Ex. 1001).

Third, Defendants inaccurately submit that Doe will not be irreparably harmed due to a delay in commencing this action. (ECF No. 96, Def. Opp. at 8). Doe was expelled from IUSM on June 16, 2020. (ECF No. 69-20, Ex. 21, IUSM Dismissal). He initiated this lawsuit by filing a complaint on July 30, 2020. (ECF No. 1) The motion for injunctive relief was filed on October 7, 2020 (ECF No. 37), approximately two months in advance of IUSM's deadline for selection of clinical rotation preferences, which will take place in December 2020. There was no basis upon which to commence this proceeding before June 16, 2020, the date on when Doe was notified that he was permanently dismissed from IUSM. (ECF No. 69-20, Ex. 21, Dismissal Letter). Prior to June 16, 2020, Doe expected that he would be attending the Indiana University Kelley School of Business and earning his

M.B.A. during the 2020-2021 academic year, before returning to IUSM in the spring of 2021. (Doe Aff. at 7, ¶ 16-18, ECF No. 88-1, Ex. 1000).

Defendants present Doe's testimony out of context in stating he was "willing to accept 'a two (2) year gap in medical school' in March 2020." (ECF No. 96, Def. Opp. at 8). In the spring of 2020, in reliance on Dean Hess's assurances that Doe would be offered admission to IUKSB, Doe was at that time willing to accept the two-year gap in his medical education because one of those years would be spent in the pursuit of his business degree, ultimately leading him to graduate with a joint M.D./M.B.A. (ECF No. 88-1, Doe Aff. at 9, ¶ 26). When Doe was expelled from IUSM on June 16, 2020, he was left without an M.B.A. or an M.D., leaving him with no further options but to commence this action, which he did six weeks later.

### ***B. Likelihood of Success on the Merits***

#### **1) Fourteenth Amendment Procedural Due Process**

##### **a) Property Interest**

Plaintiff has amply demonstrated a property interest in his continued education at IUSM, which was taken away from him by the University's actions. Defendants do not dispute that a contract existed between Doe and the University, and that the terms of the contract governed any disciplinary proceedings. Contrary to Defendants' contention, the present matter is plainly distinguishable from *Charleston* in which the plaintiff alleged only that his dismissal was in violation of the University's policies. *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago,* 741 F.3d 769 (7th Cir. 2013). Here, Doe is quite specific in identifying the particular promises made to him through the University's Policy and Guidelines, including the following: "The Guidelines provide that any student cited "for lack of acceptable academic standards, ethics, or professional behavior" (ECF No. 69-2, Guidelines, Ex. 2 at 4, ¶ 11(F)) "will be ***required*** to appear before the SPC to discuss why he/she should not be dismissed from school." (emphasis added) (ECF No. 69-2, Guidelines, Ex. 2 at 4, ¶ 11). The foregoing

establishes that Plaintiff has demonstrated a "legitimate entitlement [to his continued education] by pleading the existence of an express or implied contract…" *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago,* 741 F.3d at 773.

**b) Liberty Interest**

Plaintiff has also demonstrated a cognizable liberty interest under the Fourteenth Amendment, further entitling him to due process protections. In arguing Plaintiff has failed to satisfy the state inflicted reputational damage element of the stigma-plus test, Defendants overlook the relevant portion of the Court's holding in *Doe v. Purdue*. (928 F.3d 652 (7th Cir. 2019)). There, Purdue University similarly argued that the stigma-plus test could not be satisfied because it had not divulged the plaintiff's disciplinary record. *Doe v. Purdue Univ.,* 928 F.3d at 661. The Court went on to analogize the matter to *Dupuy v. Samuels* (397 F.3d 493 (7th Cir. 2005)) in which the Court concluded that the publication requirement of the stigma-plus test was satisfied when the plaintiffs were obligated to authorize a state agency to disclose its findings to current and prospective employers, the disclosure was "compelled and certain," and the disclosure was not self-published but came from the defendant, even if plaintiff was obligated to authorize such disclosure. *Doe v. Purdue Univ*., 928 F.3d at 662.

Similarly, Doe will unquestionably be obligated to disclose to any future employer or medical school the disciplinary findings on his record. Whether the disclosure is made by the University directly, or by Doe himself, such disclosure is consequently "compelled and certain," rather than speculative, thus satisfying the publication element of the stigma-plus test. In addition, Defendants notably omit that Indiana University-Purdue University Indianapolis ("IUPUI") and IUSM have already disclosed Doe's entire disciplinary record to IUKSB. As part of the application process to IUKSB, Doe was not only obligated but required to sign an authorization permitting IUKSB to obtain his disciplinary records, including the March 27, 2020 letter from Dean Hess, the disclosure of which was "compelled and certain." (ECF No. 69-18, Ex. 19, Henry Email to Doe at 1); (ECF No. 82-11,

Ex. 2049, Henry Email to Hess at 1); (ECF No. 82-10, Ex. 2048, IUKSB Application at 8). IUKSB had no prior knowledge of Doe's disciplinary records, as he was not a student there. (ECF No. 88-10, Ex. No. 1082, SPC Report); (ECF No. 82-10, Ex. No. 2048, IUKSB Application). As a result, IUPUI and IUSM's disclosure of Doe's records and the disciplinary findings to IUKSB constitute publication for purposes of a stigma-plus analysis.[1] *Id.; See also Doe v. Purdue Univ.* 928 F.3d at 662 (highlighting that publication is satisfied when a plaintiff is "obligated authorize a state agency to disclose its finding.")[2]

**c) Violations of Due Process/Procedural Violations**

***i) Dismissal from IUSM- June 16, 2020***

As described in his Amended Brief, on June 16, 2020, Dean Jay Hess summarily expelled Doe from Indiana University School of Medicine without any prior notice and without any opportunity to be heard. Doe was informed by letter from Dean Hess that he was dismissed from IUSM for the stated reason that information Doe provided in his application to the Indiana University Kelley School of Business ("IUKSB") was inconsistent with what Dean Hess had represented during their meeting on March 4, 2020 and in his subsequent letter of March 27, 2020 concerning Doe's return to the medical school. (ECF No. 69-20, Ex. 21, Dismissal Letter).

Doe met with Dean Hess on March 4, 2020. (ECF No. 71-6, Ex. 79, Hess Aff. at 6, ¶ 21). During that meeting, Dean Hess was clear that Doe would be offered admission to IUKSB, and that he would thereafter be permitted to return to IUSM, after an additional one-year leave of absence.

---

[1] Although IUKSB, IUSM, and IUPUI are all part of Indiana University, each entity operates with its own independent admissions process, which resulted in IUKSB's rejection of Doe. (ECF No. 82-10, Ex. 2048, IUKSB Application); (ECF No. 69-19, Ex. 20, IUKSB Rejection).

[2] Similar to *Doe v. Purdue Univ.,* where the Court found that the university's disclosure of the plaintiff's disciplinary finding amounted to state inflicted harm that stigmatized the plaintiff, in the instant matter, the disclosure of Doe's disciplinary record to IUKSB constituted state inflicted harm sufficient to meet that element of the stigma-plus test. *See Doe v. Purdue Univ.* 928 F.3d at 662.

(ECF No. 88-9, Ex. 1059, Hess Recording). Contrary to Defendants' contentions, (ECF No. 96, Def. Opp. at 5), Dean Hess did not state that Doe would need to apply for readmission to IUSM. He did however, state in relevant part as follows, with respect to Doe's return to IUSM:

- "Uh, my recommendation, uh, I actually am the decision maker, so uh, I uh, I could accept you returning to medical school in a year…so…not this fall but next fall." (ECF No. 88-9, Ex. 1059, Hess Recording at 22:11-22:32).
- "But I would be willing to, uh, ***override the SPC committee***, uh, under the condition that you continue to have some documented counseling." (ECF No. 88-9, Ex. 1059, Hess Recording at 23:58-24:10).
- "Yeah, so I would say and obviously put this in a letter, uh, for you. You know, there, there does need to be another year before going back to medical school, so that you can do your MBA part that, that would be good for a variety of reasons. Uh, you know, this ongoing counseling. Uh, obviously, you know, uh, you're, you know, you have to be an exemplary citizen *laughs* and not, you know, there aren't any - you can't have, you know, any more problems." (ECF No. 88-9, Ex. 1059, Hess Recording at 25:08-25:41).

Doe and Dean Hess also engaged in the following exchange, regarding the terms agreed to:

Dean Hess: Good. We'll get a letter to you.

Doe: OK.

Dean Hess: Uh…

Doe: So you say this would be something that would be in writing so it would be guaranteed in terms of coming back in 2021.

Dean Hess: Yeah. Like, like everything we'll have to get a legal review of the letter and everything. But, but basically I, I think what we're talking about is, it's, it's a, an additional years leave of absence but, you know, you can do your MBA during that, if you get in, ***I mean, when you get in.***

Doe: Yeah.

Dean Hess: And all that kind of thing.

(ECF No. 88-9, Ex. 1059, Hess Recording at 27:58-28:31) (emphasis added).

Dean Hess concluded the meeting, telling Doe that he would see him "up on stage in a few years," (ECF No. 88-9, Ex. 1059, Hess Recording at 29:27-30), referring to Doe's anticipated graduation from medical school. At the conclusion of this meeting, Doe reasonably understood that

Dean Hess was overturning the SPC's recommendation of expulsion and that he was all but guaranteed admission into IUKSB. (Doe Aff. at 7, ¶ 16-17, ECF No. 88-1, Ex. 1000). Plaintiff likewise urges the Court review the audio recording of the March 4, 2020 meeting.[3]

IUSM's Guidelines for Promotion, Suspension, Dismissal, and Withdrawal (ECF No. 69-2, Guidelines, Ex. 2) make clear that a student recommended for dismissal "will be ***required*** to appear before the SPC to discuss why he/she should not be dismissed from school." (ECF No. 69-2, Ex. 2 at 4, ¶ 11) (emphasis added) Dean Hess and Dr. Reeser both confirmed that before someone is expelled from IUSM, they *must* receive some type of meeting or hearing regarding the charges leading to the expulsion. (Hess Dep. Tr. 81:23-82:4, ECF No. 84-7, Ex. 92 at 82-83); (Reeser Dep. Tr. 30:24-31:20, ECF No. 84-6, Ex. 91 at 30-31). Doe received neither.

Doe did not receive any notice, nor did he receive a hearing of any kind, prior to being dismissed from IUSM on June 16, 2020. Defendants actions were in contravention of both the plain language of IUSM's Guidelines, as well as Fourteenth Amendment Procedural Due Process. It is well settled that "[t][he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.E.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), *Marshall v. Lauriault*, 372 F. 3rd 175 (3rd Cir. 2004)). The "opportunity to be heard" is the "constitutional minimum." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). In addition, the Guidelines for Promotion, Suspension, Dismissal and Withdrawal unequivocally state that any student cited "for lack of acceptable academic standards, ethics, or professional behavior" (ECF No. 69-2, Guidelines, Ex. 2 at 4, ¶ 11(F)), which includes lying, (Hess Dep. Tr. 82:14-22, ECF No. 84-7, Ex. 92 at 83), "will be ***required*** to appear before the SPC to discuss why he/she should not be dismissed from school."

[3] Indiana is a one-party consent state. See *Burrow v. Sybaris Clubs Int'l, Inc.*, No. 13 C 2342, 2015 WL 1887930 (N.D. Ill. Apr. 24, 2015) (noting that only one party is required to consent to a recording).

(emphasis added) (ECF No. 69-2, Guidelines, Ex. 2 at 4, ¶ 11). The Guidelines do not differentiate between an "academic" as opposed to "disciplinary" dismissal, but instead, mandate that students cited for misconduct which may lead to dismissal, are **required** to appear for a hearing before the SPC. (ECF No. 69-2, Guidelines, Ex. 2 at 4, ¶ 11).[4]

Recognizing the indisputable violation of their own Guidelines, Defendants attempt to reframe the procedural history of this matter. Defendants argue that Doe's correspondence with the Prior Misconduct Review Committee regarding his business school application constituted a sufficient opportunity to be heard on the alleged conduct that led to his dismissal from IUSM. (ECF No. 96, Def. Opp. at 23-24). Critically however, Defendants acknowledge that the alleged conduct leading to Doe's dismissal from IUSM was "a **<u>new and discrete act</u>** of academic misconduct." (ECF No. 96, Def. Opp. at 5) (emphasis added). As this alleged misconduct was a "**new and discrete act**," Doe was entitled to notice and the hearing mandated by the Guidelines. In fact, Dean Hess and Dr. Reeser both confirmed that before someone is expelled from IUSM, they *must* receive some type of meeting or hearing regarding the charges leading to the expulsion. (Hess Dep. Tr. 81:23-82:4, ECF No. 84-7, Ex. 92 at 82-83); (Reeser Dep. Tr. 30:24-31:20, ECF No. 84-6, Ex. 91 at 30-31). Doe was never informed that Dean Hess was reviewing Doe's application to the business school for purposes of determining whether he was fit to be a medical student. (Hess Dep. Tr. 87:3-9, 103:3-7, ECF No. 84-7, Ex. 92 at 88, 104); (Reeser Dep. Tr. 76:23-77:3, ECF No. 84-6, Ex. 91 at 76-77). And Doe was further never informed that the fact he had previously appeared before the SPC, on an unrelated

[4] The present matter is distinguishable from *Fenje v. Feld*, as the plaintiff in that case was "provided an opportunity to give his side of the story in an effort to dissuade Dr. Feld from dismissing him from the program…" *Fenje v. Feld*, 398 F.3d 620, 627 (7th Cir. 2005). Here, Doe received no such opportunity to be heard. Thus, even if this Court were to deem the alleged conduct leading to Doe's dismissal as falling within the ambit of an "academic dismissal," Doe still received less than the minimal process required prior to his dismissal.

matter, was all the process to which he was entitled. (Hess Dep. Tr. 84:20-87:9, ECF No. 84-7, Ex. 92 at 85-88).

Doe's participation in the prior Title IX investigation and SPC process, related to allegations of dating violence, were entirely separate and apart from, the conduct which formed the basis of Dean Hess's decision to expel Plaintiff, namely, the purported mischaracterization of information presented in his Kelley School of Business application. (ECF No. 69-20, Ex. 21, IUSM Dismissal). Dean Hess did not reference any other conduct that contributed to this decision in the June 16 letter. *Id.* Incredibly, Defendants do not deny that Doe was deprived of a hearing on the "**new and discrete act**" for which he was expelled. Instead, they seemingly contend that because the SPC had previously recommended a sanction of dismissal in relation to a wholly separate matter, this somehow permitted Dean Hess to expel Doe from IUSM at any time in the future, for any reason or for no reason at all. (ECF No. 96, Def. Opp. at 23-24). The prior recommendation of dismissal issued by the SPC, in October of 2019, did not provide IUSM with carte blanche to expel Doe on unrelated conduct at any time. And nothing in the Guidelines states as much. (ECF No. 69-2, Guidelines, Ex. 2). The prior findings of the SPC did not relieve Defendants of their duty not to sanction one of its students without any process whatsoever, let alone the minimal process required by the Guidelines and Doe's fundamental rights.

***ii) May 20, 2019 Hearing***

It is well settled that "a body that has prejudged the outcome cannot render a decision that comports with due process." *Bakalis v. Golembeski*, 3 F.3d 318, 326 (7th Cir. 1994); see also *Pavel v. Univ. of Oregon*, 2017 WL 1827706 (D. Oregon May 3, 2017); *Playfair v. South Lemhi School Dist.* 2009 WL 2474205 (D. Idaho 2009) ("A hearing does not comport with due process if it 'is totally devoid of a meaningful opportunity to be heard' because the decision-makers have predetermined the outcome of the hearing") (quoting *Matthews v. Harney County Or., School Dist. No. 4*, 819 F.2d. 889 (9th

Cir 1987)); *Washington v. Kirksey*, 811 F.2d 561, 564 (11th Cir.1987) ("Due process of law does not allow the state to deprive an individual of property where the state has gone through the mechanics of providing a hearing, but the hearing is totally devoid of a meaningful opportunity to be heard.") Defendants infected the impartiality of the May 20, 2019 Title IX hearing when Deputy Title IX Coordinator Sara Dickey ("Ms. Dickey") informed Chairperson Wende' Ferguson ("Ms. Ferguson") about the allegations concerning the firearm and notified her that Doe was provided access mistakenly to an unredacted copy of the Final Investigation Report Appendix, which failed to redact this information. (ECF No. 71-4, Ex. 77(B), Ferguson Aff. at 6, ¶ 33). Defendants acknowledge that only the Chair of the Hearing was provided this information, while the other two panel members were not informed. (ECF No. 96, Def. Opp. at 18). It was highly inappropriate, and prejudicial to Doe, to provide this material to the Chair of the Hearing, which both the investigator and Deputy Title IX Coordinator had previously determined should be redacted from the report on the grounds that it was "potentially prejudicial or inflammatory." (ECF No. 71-3, Ex. 76, Dickey Aff. at 4, ¶ 17). This action deprived Doe of the fair and impartial hearing panel to which he was entitled.

***iii) Title IX Investigation***

In addition to the fundamental procedural protections of notice and an opportunity to be heard, Doe was also entitled to the specific guarantees delineated in Defendants' policies and procedures. As described in Plaintiff's Brief, Defendants violated several of its own policies and procedures, to the detriment of Doe.

***1) Mr. Kuester was not properly trained.***

The University's Policy is clear that "[a]ll investigators shall have the appropriate required and ongoing training on conducting sexual misconduct investigations, issues related to sexual misconduct and applicable University policies and procedures." (ECF No. 69-1, Ex. 1, Policy at 9). In addition, IU guarantees that a respondent to an investigation will "have allegations investigated by individuals

who are properly trained to investigate and resolve allegations of sexual misconduct." (ECF No. 69-1, Ex. 1, Policy at 10). Defendants contend that Mr. Kuester was a qualified investigator who was trained on the University's Code and Policy by Deputy Title IX Coordinator Ms. Dickey. (ECF No. 96, Def. Opp. at 16). Mr. Kuester's testimony disputes this assertion, explaining that his only "training" consisted of receiving a copy of the Policy and reading it. (Kuester Dep. Tr. 48:15-49:9, ECF No. 84-1, Ex. 86 at 49-50). Prior to arriving at IU, Mr. Kuester served for less than a year as a Title IX investigator for Purdue University. (Kuester Dep. Tr. 20:16-19, ECF No. 84-1, Ex. 86 at 21). During that time, he received training from sexual misconduct investigators at Purdue. (ECF No. 71-7, Ex. 80, Kuester Aff. at 2, ¶ 3-4) Notably, *Doe v. Purdue*, the leading 7th Circuit case on Title IX and procedural due process in the student disciplinary context, revealed the appalling manner in which investigators at Purdue handled a Title IX investigation and deprived the accused of a fair process. Certainly, the mere reading of a policy, or the fact Mr. Kuester was trained to conduct investigations by a prior university whose practices have been judicially condemned, does not satisfy the explicit guarantees of the Policy that investigators must be properly trained.

***2) Mr. Kuester failed to conduct an adequate and impartial investigation.***

Mr. Kuester violated the University's policies when he failed to conduct the "adequate, reliable, and impartial investigation" to which Doe was entitled. (ECF No. 69-1, Ex. 1, Policy at 10). Defendants inaccurately claim that Mr. Kuester conducted the investigation "consistent with…the University's policies and procedures." (ECF No. 96, Def. Opp. at 16). This statement is not true and is contradicted by the record. For instance, Mr. Kuester failed to take any affirmative action to interview Roe's father. (Kuester Dep. Tr. 107:21-108:6, ECF No. 84-1, Ex. 86 at 108-109). Mr. Kuester understood that the Policy did not require him to obtain Roe's permission to speak with any witness as part of the investigation, (Kuester Dep. Tr. 108:22-109:4, ECF No. 84-1, Ex. 86 at 109-110), however he did still request permission from Roe to speak with her father. (Kuester Dep. Tr. 110:3-

6, ECF No. 84-1, Ex. 86 at 111). When Roe declined, Mr. Kuester did not take any other action to contact the witness. (Kuester Dep. Tr. 110:13-111:2, ECF No. 84-1, Ex. 86 at 111-112). Had he been operating in accordance with the Policy, he would have made efforts to contact Roe's father on his own, without seeking Roe's permission to do so.

Further, Mr. Kuester violated Doe's right to an "adequate, reliable, and impartial investigation" when he not only failed to request Roe provide an authorization for her medical records, but incredibly, never even thought to ask her for one. (Kuester Dep. Tr. 104:9-25, ECF No. 84-1, Ex. 86 at 105); (ECF No. 88-15, Ex. 2023, Final Report at 3). Contrary to Defendants' argument (ECF No. 96, Def. Opp. at 17, fn. 10), Mr. Kuester himself testified that the medical records could have been helpful. (Kuester Dep. Tr. 102:10-16, ECF No. 84-1, Ex. 86 at 103). This sentiment was reflected in Mr. Kuester's repeated requests to Roe to provide him with a copy of the records, noting again that they would be "helpful." (ECF No. 74-18, Ex. 1076, Email January 16-17, 2019). Roe never produced the medical records (Kuester Dep. Tr. 102:17-20, ECF No. 84-1, Ex. 86 at 103) and Mr. Kuester took no further action.

***3) Doe was denied an opportunity to make a statement.***

The Policy guarantees at Section e(ii), that "Both the complainant and respondent will have equal opportunity to provide a statement to the hearing panel." (ECF No. 69-1, Ex. 1, Policy at 12). Doe prepared a statement in which he highlighted discrepancies in Roe's account, pointed to evidence disputing her allegations, and addressed evidence that challenged Roe's credibility. (ECF No. 69-4, Ex. 4, Opening Statement). Doe's inability to present a full statement impacted his opportunity to present a meaningful defense, directly violating his due process rights. *See Doe v. Pennsylvania State Univ.,* 276 F. Supp. 3d 300, 311 (M.D. Pa. 2017) ("to be fair, the accused must therefore be afforded the opportunity to respond, explain, and defend") (internal citations omitted).

Contrary to Defendants' characterization, the additional evidence Doe sought to present, including an audio recording of Roe, was not immaterial character evidence. (ECF No. 96, Def. Opp. at 19). The audio recording, in which Roe openly admitted to lying, was a fact that should have gone towards an assessment of Roe's credibility. In cases such as these, where credibility of the parties is germane to every investigation, Doe should have been permitted to present this evidence. Ms. Ferguson's refusal deprived him of his opportunity to present a full defense.

**2) Title IX**

**a) Erroneous Outcome**

Doe is also likely to succeed on the merits of his Title IX-Erroneous Outcome claim. While Defendants attempt to combat the gender biased language and scenarios present throughout the University's training materials, the inclusion of some gender-neutral language does not nullify the perceptible bias. To reiterate, the mandated training sessions attended by those involved in Doe's case included the following information:

(i) "Sexual assault is an act of dominance. It is the use of a sex act to fulfill the perpetrator's desire for power/control, revenge, recreation, proof of masculinity, and/or sexual gratification." (ECF No. 73-2, Ex. 1002, Complainant Trauma and Respondent Stress at 6).

(ii) "99% of sexual violence perpetrators are male." (ECF No. 73-2, Ex. 1002, Complainant Trauma and Respondent Stress at 8).

(iii) "Supporting the Victim…Believe them → don't question the story." (ECF No. 73-2, Ex. 1002, Complainant Trauma and Respondent Stress at 60).

(iv) "Indiana University is committed to…supporting victims with full information about available resources, assisting victims in accessing resources, and at all times exhibiting personal care and concern to victims." (ECF No. 77-7, Ex. 2004, Hearing Commission Sexual Misconduct Panel Training at 4).

In addition, the "Sanctioning Activity" training presented by Ms. Freiberger, provided five sample scenarios for discussion of appropriate sanctions; in all five scenarios the respondent was a male. (ECF No. 73-3, Ex. 1007, Sanctioning Activity at 3-8); (Freiberger Dep. Tr. 33:3-35:24, ECF

No. 84-5, Ex. 90 at 33-35). Defendants point out that in one of the five scenarios, the complainant was male. (ECF No. 96, Def. Opp. at 28). However, this does not dispel the notion that the University views all male respondents as responsible and therefore deserving of sanctions.

**b) Selective Enforcement**

Finally, Plaintiff is likely to succeed on his Title IX-Selective Enforcement claim. Defendants' contention that the Office of Student Conduct handled Doe's and Roe's complaints in the same manner is disingenuous and disputed by the factual record. Ms. Dickey was aware of Doe's complaint against Roe as early as January of 2019. (Dickey Dep. Tr. 59:9-15, ECF No. 72-1, Ex. 85 at 60); (Dickey Aff. at ¶ 28, ECF No. 71-3, Ex. 76). She did not learn that Doe did not want to move forward with an investigation against Roe until four months later, on the day of the Title IX hearing, as she did not attempt to meet or speak with Doe about his allegations, (Dickey Dep. Tr. 59:23-25, ECF No. 72-1, Ex. 85 at 60), and did not advise him of his right to pursue a complaint against Roe. (Doe Dep. Tr. 51:3-5, ECF No. 71-10, Ex. 84 at 51); (Doe Dep. Tr. 70:4-16, ECF No. 71-10, Ex. 84 at 70). Contrarily, when Roe expressed that she did not want to pursue an investigation, Mr. Kuester reached out to Roe repeatedly to determine if she would pursue the matter. (ECF No. 73-5, Ex. 1016); (ECF No. 73-6, Ex. 1017). The disparate treatment of Doe and Roe with respect to their complaints against one another reflects the inequity in the process and gender bias against Doe as the male accused, as compared to Roe as a potential accused.

## CONCLUSION

For the reasons stated above, this Court should grant Plaintiff John Doe a preliminary injunction enjoining Defendants from enforcing the dismissal of Plaintiff from Indiana University School of Medicine, and permitting him to return to Indiana University School of Medicine immediately such that he may select his rotation preferences in December 2020 and begin clinical rotations in the spring of 2021.

**Dated:** **New York, New York**
**November 18, 2020**

**Respectfully submitted,**

***Attorneys for Plaintiff John Doe***

**NESENOFF & MILTENBERG, LLP**

**By: *<u>/s/ Andrew T. Miltenberg</u>***
**Andrew T. Miltenberg, Esq. (*pro hac vice*)**
**Stuart Bernstein, Esq. (*pro hac vice*)**
**Philip A. Byler, Esq. (*pro hac* vice)**
**Tara J. Davis, Esq. (*pro hac vice*)**
**Regina M. Federico, Esq. (*pro hac vice*)**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**amiltenberg@nmllplaw.com**
**sbernstein@nmllplaw.com**
**pbyler@nmllplaw.com**
**tdavis@nmllplaw.com**
**rfederico@nmllplaw.com**

**DELK MCNALLY, LLP**

**By: *<u>/s/ Michael McNally</u>***
**Michael McNally, Esq.**
**IN No. 23676-49**
**211 South Walnut Street**
**Muncie, Indiana 47305**
**(317) 442-4444**
**mcnally@delkmcnally.com**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon all counsel of record via the Court's Electronic Notification System, this 18th day of November, 2020.

/s/ *Tara J. Davis*______
Tara J. Davis