UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02006-JRS-MJD |
| | ) |
| THE TRUSTEES OF INDIANA UNIVERSITY, | ) |
| INDIANA UNIVERSITY SCHOOL OF MEDICINE, | ) |
| INDIANA UNIVERSITY KELLEY SCHOOL OF BUSINESS, | ) |
| GREGORY KUESTER, | ) |
| BRADLEY ALLEN, | ) |
| JAY HESS, | ) |
| INDIANA UNIVERSITY PURDUE UNIVERSITY INDIANAPOLIS, INDIANA, | ) |
| | ) |
| Defendants. | ) |

**Order on Motion for Preliminary Injunction**

On June 16, 2020, Defendant Indiana University School of Medicine ("IUSM") expelled Plaintiff John Doe. (ECF No. 1) Doe now moves this Court to preliminarily enjoin Defendants Trustees of Indiana University, IUSM, Indiana University Purdue University – Indianapolis ("IUPUI"), and Jay Hess (collectively, "Defendants") from enforcing the dismissal of Doe from IUSM, and requests an evidentiary hearing. (ECF No. 37.) Injunctive relief is necessary, according to Doe, to permit him to select his clinical rotation preferences on December 10, 2020, (*id.* at 3), and allow him to begin rotations in the spring of 2021, (ECF No. 94 at 5). Doe maintains meeting these dates is critical if he "is to have any chance of ever becoming a practicing physician

1

in the United States." (*Id.*)  An evidentiary hearing is not necessary to rule on this motion.  For the following reasons, Doe's motion, (ECF No. 37), is denied.

## I. Background

In the fall of 2017, Doe matriculated at IUSM. (ECF No. 37-1 at 1.)  Doe and Jane Roe ("Roe"), a fellow IUSM medical student, began their year-long romantic relationship in October of 2017.  (ECF No 87-13 at 4.)  During their relationship, Doe and Roe went through several break-ups and reconciliations, and their relationship eventually ended in October of 2018.  (*Id.*)  On October 24, 2018, Roe filed a report with the Office of Student Conduct, reporting that she experienced two instances of physical violence in the summer of 2018 at the hands of her then-boyfriend Doe.  (ECF No. 87-13 at 2.)

The Interim Associate Dean of Students conducted the initial outreach to Roe on October 26, 2018.  Shortly after, Mr. Gregory Kuester, an interim investigator retained by the University, began his investigation into Roe's allegations.  On January 18, 2019, Mr. Kuester notified Doe that a formal investigation was underway.  Mr. Kuester met with Doe on four separate occasions to review the investigation procedures, obtain Doe's statement, and collect evidence.  (ECF No. 87-13 at 3.)  During his investigation, Mr. Kuester also met with Roe twice and interviewed eight witnesses.  (*Id.* at 4.)

On March 28, 2019, Doe and Roe were provided a link to review the Preliminary Investigation Report, and both Doe and Roe were given ten days to provide a response

to the report. (*Id.*) Doe responded on April 5, 2019. (*Id.*) Roe acknowledged that she reviewed the report but did not provide a response. (*Id.*)

On May 20, 2019, Doe appeared, with his attorney, before a three-person administrative hearing panel. (ECF No. 80-1.) During the hearing, Doe was permitted to provide opening and closing statements related to the conduct at issue, answer questions, and ask questions, either directly or through the panel chair, of all witnesses, including Roe. (ECF No. 80 at 17–39, 60–63, 71–81, 82–92.)

The three-person panel unanimously found Doe responsible for the charge of dating violence. (ECF No. 70-3 at 10.) In making its determination, the panel made the following findings of fact:

> In regards to the allegation of physical abuse within [Doe's] dating relationship, the Hearing Commission placed the greatest weight on the material facts of the investigation not in dispute and [Doe's] agreement during the hearing that they were not in dispute, the photo of the bruise on [Roe's] back and the timestamp that corresponds with the incident at [Roe's] father's residence on page 24 of the Report, the amount of force it would take to cause the damage to the doorframe in the way pictured on pages 19-20 of the Report, and the messages from [Roe] to [Doe's] mother and the timestamps that correspond with the incident at [Roe's] father's residence on page 21-23 of the Report. The panel concluded that these actions constituted violence committed by a person who is or has been in a relationship of a romantic or intimate nature in violation of the Sexual Misconduct Policy.

> In regards to the allegation of verbal abuse, the Hearing Commission found that there was insufficient information to demonstrate that [Doe] w[as] verbally abusive towards [Roe]. Specifically, the panel placed weight on the verbal exchanges being arguments between [Doe] and [Roe], resulting in what was identified by [Doe] as a "toxic relationship," and could not conclude that there was violence committed by a person who is or has been in a relationship of a romantic or intimate nature in violation of the Sexual Misconduct Policy.

(ECF No. 37-7 at 1.) The panel imposed a one-year suspension, (*id.* at 2), among other sanctions.

Doe appealed the panel's findings and sanctions, (ECF No. 37-9), but his appeal was denied on June 7, 2019, (ECF No. 37-10). Because Doe was found to have violated the Indiana University Sexual Misconduct Policy, which is considered a violation of the school's Professional Conduct Policy, Doe was required to appear before the Student Promotions Committee ("SPC"). (ECF No. 87-8.) On October 29, 2019, Doe met with the SPC. (ECF No. 37-12.) After the meeting, the SPC recommended that Doe be dismissed from IUSM. (*Id.* at 1.) Doe then sought reconsideration by the SPC, (ECF No. 37-13), and by the Student Appeals Committee, (ECF No. 37-14). After being denied reconsideration by both committees, Doe sought final review by the Dean of IUSM, Dr. Jay Hess. (ECF No. 37-17.)

Dean Hess reviewed and granted Doe's appeal. (ECF No. 37-17.) In granting Doe's appeal, Dean Hess placed additional limitations on Doe before he could re-enroll at IUSM, including that Doe "must take one additional year of an administrative leave and would be eligible to return to [IUSM] in April 2021," and that "[a]ny subsequent violation of academic or personal codes of conduct as defined by the University or the School during [Doe's] administrative leave may jeopardize [his] ability to return in May 2021 as anticipated." (ECF No. 37-17 at 1.)

During Doe's suspension, he applied for admission to the Indiana University Kelley School of Business ("KSB") seeking an MBA. During the application process, Doe

4

was required to disclose previous misconduct, which he did.  (ECF No. 83-5.)  Doe stated in his KSB application in relevant part:

> In March 2020, after a 17-months' long investigation and adjudication process, Dean Jay Hess of Indiana University School of Medicine granted my appeal and *overturned the erroneous findings* of an IUPUI Hearing Panel, and the subsequent action taken by IUSM. *This appeal fully authorizes my return to IUSM without limits or restrictions.* I filed this appeal in response to a May 2019 Hearing Panel where I was erroneously found responsible for violation of IUPUI's Sexual Misconduct Policy Part II, H 20: Physical abuse of any person, including the following: e. Physical abuse that constitutes dating or domestic violence as defined in the Sexual Misconduct Policy, UA-03. The allegations were initiated by an ex-girlfriend with whom I had a tumultuous relationship. I was issued a one-year suspension, which would have expired on May 15, 2020. At no time were any outside law enforcement officials involved nor were there any witnesses to the alleged behavior. I have never been arrested, nor have I ever been accused of any crime in my entire life.

(ECF Nos. 69-19, 83-5) (emphasis added).  Doe's disclosure of his previous misconduct triggered a review of his application by the IUPUI Prior Misconduct Review Committee ("PMRC").  The PMRC notified Doe that it discovered discrepancies between his statements and its findings, and it asked him to provide an explanation, which he did.  (ECF No. 76-18 at 1, 3–4.)  KSB and Doe also each notified Dean Hess about the PMRC's discovered discrepancies, (*see* ECF Nos. 74-6, 74-13, 82-11).

On May 29, 2020, the PMRC met to review Doe's application statements and the explanation he provided about the discrepancies, and the committee decided to deny Doe's application to KSB.  (ECF No. 37-20.)  On June 16, 2020, Dean Hess notified Doe that he reviewed the misrepresentations Doe made on his KSB application, and, as a result of Doe's misrepresentations, Dean Hess immediately dismissed Doe from IUSM.  (ECF No. 69-20.)

5

## II. Legal Standard

To obtain a preliminary injunction, a plaintiff must show (1) that he will suffer irreparable harm absent preliminary relief; (2) that traditional legal remedies are inadequate; and (3) that he has "some" likelihood of success on the merits. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). If the plaintiff proves these elements, "the court next must weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). Under the Seventh Circuit's "sliding scale" approach, "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays*, 974 F.3d at 818 (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).

## III. Discussion

*A. Irreparable Harm*

Doe has not proven that he will suffer irreparable harm absent this Court granting his motion.

Doe first argues that he will suffer irreparable harm because of IUSM's "six-year rule," which requires students to complete all pre-clinical and clinical requirements within six years. (ECF No. 94 at 8.) That is, if Doe is unable to select rotation preferences in December of 2020, he will not be on track to graduate in the spring of 2023, within the required six years. This assertion is contrary to the Title IX appeal granted by Dean Hess, wherein Doe would not even have been eligible to return to IUSM until April 2021. Indeed, Defendants respond that the six-year rule Doe relies

on to argue for irreparable harm is not rigid and has exceptions; therefore, Doe's reliance on the six-year rule is misplaced. The Court agrees with Defendants.

In support of his argument, Doe provides testimony from Dr. Suzanne Miller, an expert on medical admissions. (Miller Aff., ECF No. 73-1.) Dr. Miller thoroughly highlights the consequences of being expelled from medical school. For example, she states that "[e]xpulsion from medical school decreases even a stellar student's chance of becoming a physician in the US to <1% because, unlike in undergraduate institutions, it is nearly impossible to transfer or gain advanced standing . . . to a US medical school even for applicants without questions of integrity/misconduct." (*Id.* at 7.) "Further, applying to start over as a first year after being expelled from medical school is also nearly impossible." (*Id.*)

While expulsion from medical school is serious and perhaps even devastating for an individual aspiring to become a doctor, it is unclear how that fact warrants a showing of irreparable harm here because Doe has an opportunity to complete his medical education at IUSM should he win on the merits in this case. Indeed, Dr. Jay Hess, Dean of IUSM, stated that "if a court should order the School to reinstate a student after litigation concluded, . . . then IUSM could and would comply with that order." (Hess Affirmation, ¶ 50, ECF No. 70-5 at 12.)

Moreover, the six-year rule that Doe relies on to argue for irreparable harm is "a policy implemented by the IUSM, not a law or regulation." (*Id.* ¶ 49.) Dr. Miller's reasoning for arguing that Doe would suffer irreparable harm relies on the misunderstanding that Doe must graduate within six years. Indeed, Dr. Miller states that

7

because Doe is required to graduate in August of 2023, if he "does not orient with the class of 2023 cohort in April of 2021 and begin clinical rotations in mid-summer . . . it is a near certainty he will not graduate in time to meet [IUSM]'s six-year rule." (Miller Aff. ¶ 27, ECF No. 73-1 at 9–10.) However, Dean Hess made clear that an exception could be made to the six-year matriculation policy for Doe to be reinstated at IUSM and complete his medical education at the conclusion of this case. (Hess Affirmation, ¶ 49, ECF No. 70-5 at 12.)

Doe next argues that it will be almost impossible to transfer medical schools while this litigation is pending. It seems to be the case that it would be extremely difficult for Doe to transfer medical schools given Dr. Miller's account of the difficulty medical students have when attempting to transfer schools, (*see* Miller Aff. ¶¶ 18–19, ECF No. 73-1 at 7). But, Doe's transfer arguments are immaterial in this case because the injunctive relief Doe seeks is reinstatement to IUSM—not to transfer to a different medical school.

Doe also argues that even if IUSM makes an exception to its six-year policy, Doe's gap in education will make it nearly impossible for him to gain admission to a residency program. Defendants respond that a gap in Doe's education already exists, and a further gap in his education, while this case is resolved, is not irreparable harm. Defendants have the stronger argument. Doe again points to Dr. Miller's affidavit, (*see* Miller Aff., ECF No. 73-1), to show that he will suffer irreparable harm. Yet, while Dr. Miller provides detailed information on residency program admissions and

8

medical school transfers, she does not offer any insight as to how extending the already existing gap in Doe's medical education—a gap that did not seem to be of concern when Doe applied to KSB—will further diminish his chances of matching with a residency program. Nor does Doe offer additional reasoning.

Doe's arguments rest on the assumption that he must complete his medical education at IUSM within six years. Because an exception can be made to the six-year policy at the conclusion of this case, Doe has not shown that he will suffer irreparable harm if he is not immediately reinstated at IUSM and therefore unable to select clinical rotation preferences in December of 2020.

*B. Likelihood of Success on the Merits*

"[A]n applicant for preliminary relief bears a significant burden, even though the Court recognizes that, at such a preliminary stage, the applicant need not show that it definitely will win the case." *Ill. Republican Party v. J.B. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). A plaintiff must display a "strong showing"[1] of how likely he or she is to win on the merits; however, a strong showing "does not mean proof by a preponderance . . . [b]ut it normally incudes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.*

Doe has failed to provide a strong showing that he is likely to win on the merits in this case. Doe brought claims against Defendants for violations of Title IX, 20 U.S.C.

---

[1] Doe states that the correct standard for the likelihood of success on the merits prong is the "better than negligible" standard. *See Valencia v. City of Springfield, Ill.*, 884 F.3d 959, 966 (7th Cir. 2018). Doe is incorrect. The Seventh Circuit has made clear that the better than negligible standard "was retired by the Supreme Court." *Ill. Republican Party*, 973 F.3d at 763.

9

§ 1681 *et seq.*; and for denial of Fourteenth Amendment procedural due process under 42 U.S.C. § 1983. (ECF No. 8.) But, as a preliminary matter, whether Doe's Title IX claim has any likelihood of success on the merits is irrelevant to his motion for preliminary injunction, because Doe was not ultimately expelled from IUSM as a result of the university hearing panel's decision under Title IX that he violated the dating violence provision of the Sexual Misconduct Policy. Rather, Dean Hess modified that decision in Doe's favor.

Similarly, Doe's due process claim regarding the university's Title IX disciplinary process is not relevant to his motion for preliminary injunction, because whether Doe was afforded due process during the Title IX process does not affect whether he should be immediately reinstated at IUSM rather than at the conclusion of this case, should he prevail on the merits. This is so because Doe was not expelled because of the allegedly defective Title IX disciplinary processes. Rather, he was expelled for making false statements on another graduate-school application, i.e., to KSB, (*see* ECF No. 37-21).

Doe admits that there "was no basis upon which to commence this proceeding before June 16, 2020, the date on when [sic] Doe was notified that he was permanently dismissed from IUSM." (ECF No. 101 at 2.) That is because at the conclusion of Doe's appeal of the IUPUI panel's finding that he was responsible for the charge of dating violence, Dean Hess made clear to Doe that he would be eligible to return to IUSM in April of 2021 if he complied with the additional limitations Dean Hess imposed. (ECF no. 37-17 at 1.) Notably, Doe had to take an additional year off from his medical

10

school studies, and his return to IUSM was contingent on Doe not violating any additional academic or personal codes of conduct. (*Id.*) During Doe's additional one-year gap, though, he could apply to KSB's MBA program.

If the facts ended there, Doe might be well on his way to completing his MBA, being reinstated at IUSM, and preparing to continue his medical education next year, albeit after the so-called critical date of December 2020. It was Doe's misrepresentations in his KSB application that led to both his denial from KSB and his expulsion from IUSM. Doe's arguments that he relied on Dean Hess's assurances, (ECF No. 94 at 4), expecting to attend KSB, (ECF No. 101 at 2–3), do not strengthen his assertions, because Doe was aware that if he violated any academic or personal code he jeopardized his return to IUSM. Yet, Doe still misrepresented information on his KSB application. This is a separate offense distinct from his violation of the Sexual Misconduct Policy. Therefore, even if Doe succeeds on his Title IX and due process claims thereunder, reinstatement would not be warranted because his dismissal was the result of his subsequent misrepresentations on his KSB application. Also, those claims may be remedied by damages in any event, *see infra*.

At issue, then, is whether Doe provided a strong showing that he has some likelihood to win his due process claim regarding his dismissal for misrepresenting information on his KSB application.

"A plaintiff asserting the inadequacy of procedural safeguards must first establish that the defendant's actions deprived him of either a liberty or a property interest recognized by law." *Fenje v. Feld*, 398 F.3d 620, 624 (7th Cir. 2005) (citing *Bd. of*

11

*Regents v. Roth*, 408 U.S. 564, 569 (1972)). "When considering cases that originate in an educational institution, the law distinguishes between academic dismissals and disciplinary dismissals." *Hlavacek v. Boyle*, 665 F.3d 823, 826 (7th Cir. 2011).

Procedural due process does not require any type of hearing before or after an academic dismissal. *See Martin v. Helstad*, 699 F.2d 387, 391 (7th Cir. 1983). "In an academic dismissal[,] it is sufficient that the student was informed of the nature of the faculty's dissatisfaction and that the ultimate decisions to dismiss was 'careful and deliberate.'" *Fenje*, 398 F.3d at 626 (quoting *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85 (1978). Disciplinary dismissals, by contrast, are "more objective in nature and [are] not dependent upon the analytical expertise of professional academicians," *Fenje*, 398 F.3d at 625, because they will be similar "to traditional judicial and administrative factfinding," *Horowitz*, 435 U.S. at 88–89.

Doe has not provided a strong showing that he has a property interest recognized by law. "[T]o demonstrate that he possessed the requisite property interest, a university student must do more than show that he has a contract with the university; he must establish that the contract entitled him to the specific right that the university allegedly took[.]" *Doe v. Purdue Univ.*, 928 F.3d 652, 660 (7th Cir. 2019). "[T]he student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013). Doe claims that he has an implied right to the procedures set out in the University's disciplinary policies; however, the Seventh Circuit has "rejected

12

similar claims of an interest in contractually-guaranteed university process . . . ." *Id.* "[A] plaintiff does not have a constitutional right to state-mandated process." *Id.* (citing *Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983)).

Doe similarly has not provided a strong showing that he has a liberty interest recognized by law. To determine whether a deprivation of a protected liberty interest has occurred, Doe must satisfy the "stigma plus" test, which requires him to show that the state inflicted reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held." *Doe*, 928 F.3d at 661. Doe claims that his expulsion from medical school inflicted on him reputational damage. However, Doe's claim in a liberty interest is weak, because Doe has not pointed to any state disclosure in this case, and "a plaintiff can't himself spill the beans and then blame the defendant for ruining his reputation." *Id.*

Doe has also not provided a strong showing that his expulsion from IUSM deprived him of fundamental rights, and, therefore, he has not met his burden. First, Doe's expulsion from IUSM appears to be academic in nature. In *Fenje*, a medical student was required to disclose anything in his background that would affect his candidacy for a medical residency program. 398 F.3d at 625. Fenje failed to disclose certain information in his application, which ultimately led to his dismissal. *Id.* The Seventh Circuit held that Fenje's dismissal was an academic dismissal, and that Fenje received a "greater degree of procedural due process than required under the circumstances," since he was informed of the school's concerns and was given an opportunity to explain himself. *Id.* at 626.

13

Here, as in *Fenje*, Doe was similarly dismissed for providing misrepresentations on an academic application. Moreover, the events leading to Doe's expulsion from IUSM show that Dean Hess's final determination to expel Doe from IUSM was "careful and deliberate," *see Fenje*, 398 F.3d at 626, and even was subject to forewarning to Doe of the consequences of violating any academic code of conduct. Dean Hess notified Doe on March 27, 2020, that "[a]ny subsequent violation of academic or personal codes of conduct as defined by the University . . . may jeopardize your ability to return in May 2021 as anticipated." (ECF No. 37-17 at 1.) Despite this prior notice, Doe submitted his KSB application with the identified misrepresentations on May 4, 2020. On May 8, 2020, Doe emailed Dean Hess notifying him that his KSB application was subject to review by the PMRC. (ECF 74-6.) On June 1, 2020, Ms. Henry, associate director of the IUPUI graduate office, notified Dean Hess that inconsistencies were found in Doe's KSB application. (ECF No. 82-11.) And, on June 10, 2020, Dean Hess wrote to the members of the PMRC, stating that he:

> reviewed the following: 1) my letter to Mr. Doe dated March 27, 2020, related to my decision on the conduct matter that was referred to the IU School of Medicine following the IUPUI campus Title IX determination; 2) Mr. Doe's prior misconduct disclosure in support of his request to be admitted to the Kelley School of Business; 3) Mr. Doe's response letter to the Prior Misconduct Review Committee; and 4) the letter dated June 2, 2020, from Mr. Doe's attorneys to me and an number of other university representatives.

(ECF No. 83-8.) In reviewing those items, Dean Hess concluded that Doe had not accurately represented the information on Doe's KSB application. (*Id.*)

Similar to Dr. Feld in *Fenje*, Dean Hess made a professional judgment that Doe, as a medical student "who had demonstrated a willingness to withhold damaging information when it served his purposes," could not be "fully trusted" to convey all information crucial to the health of future patients. *Fenje*, 398 F.3d at 625. Indeed, Dean Hess stated that he:

> found it troubling that [Doe's] representations were communicated after I made clear to Doe that he would have to maintain a pristine record and be an exemplary citizen in order to have a chance to be re-admitted to IUSM after completing the prescribed conditions. That Doe, in such a short amount of time, had again engaged in misconduct that directly *bore on his fitness to practice medicine* told me that a more severe sanction was warranted.
> . . .
> We cannot admit to our profession individuals who do not communicate honestly on academic matters. *Such a person cannot be trusted with the lives of patients.*

(Hess Affirmation ¶¶ 42, 44–45, ECF No. 70-5 at 11) (emphasis added). Because Doe's dismissal from IUSM was an academic dismissal, Doe has not met his burden of showing that he has some likelihood to succeed on the merits for his claim that his expulsion from IUSM deprived him of fundamental rights.

Also, Defendants argue that even if Doe's dismissal from IUSM was not an academic dismissal, the school's response to Doe's failure to comply with the conditions set by Dean Hess after the SPC process complies with due process requirements. Doe, however, argues that he was not provided any hearing or meeting by IUSM before he was expelled, claiming that his expulsion violated IUSM Guidelines. (*See* ECF No. 76-2.) The Court tends to agree with Defendants and is skeptical of Doe's argument. Indeed, not only did he have advanced notice of what might happen if he violated any

academic code of conduct in the future, but it was enough that Doe was afforded an opportunity to explain his misrepresentations after the PMRC notified him of the discrepancies it found, (ECF No. 76-18), and Doe appealed the PMRC's finding, (ECF No. 83-9). That is, Doe was provided an opportunity to be heard regarding the misrepresentations found in his KSB application. This is more than the Constitution requires, and likely meets the due process required under the IUSM Guidelines, which can afford more due process than the Constitution. Still, failure to meet the requirements in the IUSM Guidelines would not make out a federal due process claim.

For the above reasons, Doe has failed to show that he has some likelihood of success on the merits.

*C. Traditional Legal Remedies*

Even though Doe has failed the irreparable-harm and likelihood-of-success prongs, the Court briefly addresses whether traditional legal remedies are adequate. As previously stated, Doe's Title IX claim and his Fourteenth Amendment procedural due process claim regarding the university's Title IX disciplinary process are not relevant to his motion for preliminary injunction due to his dismissal being premised upon his non-Title IX academic violation. Still, even if Doe succeeds on the merits on these two claims, reinstatement at IUSM would not be the only adequate remedy—damages would also be adequate to remedy his gap in education, as many courts have held. *See, e.g.*, *Hodges v. Bd. of Supervisors of LSU*, No. 20-1456, 2020 WL 5017665, at *4 (E.D. La. August 25, 2020); *Doe v. Princeton Univ.*, No. 3:20-cv-4352, 2020 WL

16

2097991, at *7 (D.N.J. May 1, 2020); *Madej v. Yale Univ.*, No. 3:20-cv-133, 2020 WL 1614230, at *6–7 (D. Conn. March 31, 2020). "[A] defendant's ability to compensate plaintiff in money damages precludes issuance of a preliminary injunction," *Signode Corp. v. Weld-Loc Sys., Inc.*, 700 F.2d 1108, 1111 (7th Cir. 1983). Such is also the case with his due process claim regarding his dismissal for misrepresenting information on his KSB application. Moreover, even if it is the case that reinstatement is the only adequate remedy if Doe were to prevail on his due process claim related to his KSB application, Doe has failed to show irreparable harm, much less likelihood of succeeding on the merits of this claim. Doe's arguments are particularly dampened by the fact that IUSM can waive it's six-year rule, allowing Doe to complete his medical education at IUSM, should he prevail in this case under whatever theory.

### IV. Conclusion

For the reasons stated above, Doe's Motion for Preliminary Injunction, (ECF No. 37), is **denied**. The Court also finds that an evidentiary hearing is not warranted, because the Court has already carefully considered the already voluminous record. Therefore, Doe's Request for Evidentiary Hearing, (ECF No. 37), is also **denied**.

**SO ORDERED.**

Date: 11/30/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Stuart Bernstein
NESENOFF & MILTENBERG, LLP
sbernstein@nmllplaw.com

Philip A. Byler
NESENOFF & MILTENBERG , LLP
pbyler@nmllplaw.com

Tara J. Davis
NESENOFF & MILTENBERG, LLP
tdavis@nmllplaw.com

Regina M. Federico
NESENOFF & MILTENBERG, LLP
rfederico@nmllplaw.com

Michael T. McNally
DELK MCNALLY
mcnally@delkmcnally.com

Jan P. Mensz
HOOVER HULL TURNER LLP
jmensz@hooverhullturner.com

Andrew T. Miltenberg
NESENOFF & MILTENBERG, LLP
amiltenberg@nmllplaw.com

Alice McKenzie Morical
HOOVER HULL TURNER LLP
amorical@hooverhullturner.com

Wayne C. Turner
HOOVER HULL TURNER LLP
wturner@hooverhullturner.com