CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit



# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 22-1576

JOHN DOE,

                                                 *Plaintiff-Appellant*,

*v.*

THE TRUSTEES OF INDIANA UNIVERSITY, *et al.*,

                                                 *Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:20-cv-02006-JRS-MJD — **James R. Sweeney II**, *Judge*.

_____

ARGUED OCTOBER 27, 2022 — DECIDED APRIL 26, 2024

_____

Before EASTERBROOK, RIPPLE, and WOOD, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. While John Doe was a medical student at Indiana University–Purdue University Indianapolis, he had a romantic relationship with Jane Roe, a fellow student, who accused him of physical abuse. The University's Office of Student Conduct investigated and found Doe culpable. It suspended Doe for one year and imposed conditions on his return to school. The medical school's Student Promotions

2                                                                  No. 22-1576

Committee recommended that Doe be expelled. Dean Jay Hess of the medical school rejected the Committee's recommendation. So, as of March 2020, Doe was under suspension with a right to return in a year, after satisfying the conditions.

Doe then applied to the University's MBA program at the Kelley School of Business. His application disclosed his suspension but described the Dean's decision as an exoneration. This led to investigation by the University's Prior Misconduct Review Committee, which told Dean Hess that Doe had "withheld pertinent information and gave false or incomplete information" to the business school. Dean Hess concluded, without inviting further response from Doe, that he is unfit to practice medicine and expelled him from the medical school, effective June 16, 2020.

That decision led to this litigation, in which Doe accuses the University of violating both the Due Process Clause of the Constitution's Fourteenth Amendment and Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681–88. The district court granted summary judgment to the defendants. 2022 U.S. Dist. LEXIS 59743 (S.D. Ind. Mar. 31, 2022).

All of Doe's misconduct took place off campus. (We refer to his "misconduct" rather than "alleged misconduct," because the University found that Doe engaged in physical violence against Roe.) There is some doubt how, if at all, Title IX applies to student-against-student misconduct that appears to be unrelated to a university or its facilities. See *Davis v. Monroe County Board of Education*, 526 U.S. 629, 645–48 (1999). This case does not require us to address whether Title IX required the University to investigate and act, because it did both. Any contest under Title IX to the University's response depends on proof that it engaged in sex discrimination. 20 U.S.C.

No. 22-1576                                              3

§1681(a). Coming to the wrong answer in deciding who was to blame for unwelcome events in a romantic relationship, or selecting an inappropriate response, or interviewing the wrong potential witnesses, or listening to too few or too many witnesses—these and similar matters are of no concern under federal law unless the defendants treated men worse than women (or the reverse). And, as the district court explained, the record does not support an inference of sex discrimination. 2022 U.S. Dist. LEXIS 59743 at *11–24.

After the administrative proceedings began, Doe and Roe were ordered to stay away from each other. For two weeks Doe was told to use the University's facilities in West Lafayette, while Roe was allowed to stay in Indianapolis. Doe calls this sex discrimination. The district judge thought not, observing that Doe was the principal aggressor. Requiring a wrongdoer to bear some of the cost of maintaining a no-contact order is hard to call discriminatory. At all events, it is impossible to see how this brief relocation mattered to the ultimate decision. Doe's application to the Kelley School, and the Dean's response, came long after and were unrelated to who was where during the investigation's early days. Similarly, the University's delay in launching an investigation into Doe's complaint that Roe hit him on occasion did not contribute to the ultimate decision, and it is justified by the fact that Doe elected not to pursue this charge against Roe.

Finally, Doe insists that the members of the committees and panels were trained to act in ways favorable to women and rule against men. That serious charge is not borne out by the record. The training materials that the judge examined support a conclusion that the University's personnel were trained to favor *complainants*, but male as well as female

Case 1:20-cv-02006-JRS-MJD   Document 172   Filed 05/20/24   Page 4 of 12 PageID #: 8304
      Case: 22-1576     Document: 00714381707          Filed: 05/20/2024      Pages: 10      (4 of 12)

4                                                                No. 22-1576

students had access to the grievance machinery. More women than men filed complaints, but that can't be described as sex discrimination by Indiana University. Doe observes that one slide (out of 91) in a training program states that 99% of the perpetrators of sexual violence are men, but another slide reminds viewers that "most men are NOT perpetrators". Still other slides explain how men can be victims of sexual violence. The core question under Title IX is whether the people who resolved Roe's grievances "acted at least partly on the basis of sex in [this] particular case." *Doe v. Purdue University*, 928 F.3d 652, 669 (7th Cir. 2019). And of that Doe has not the slightest evidence.

Doe's constitutional argument is stronger. The district court thought that Doe's claim fails because the University provided plenty of process. There were hearings before multiple bodies. Doe could (and did) present both evidence and argument; he enjoyed the assistance of counsel. He was successful in persuading Dean Hess to set aside the Student Promotions Committee's recommendation that Doe be expelled. How could so much process be constitutionally inadequate? With respect to educational suspensions and expulsions, all the Constitution requires is "some kind of hearing". *Goss v. Lopez*, 419 U.S. 565, 579 (1975). Notice and an opportunity for informal comment suffice, *Goss* holds, and Doe had much more. See *University of Missouri v. Horowitz*, 435 U.S. 78 (1978) (declining to require elaborate adversarial hearings in academic settings); *Fenje v. Feld*, 398 F.3d 620 (7th Cir. 2005) (same). See also Henry J. Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267 (1975).

Yet the fact that Doe received lots of process does not mean that he had an opportunity to be heard when it mattered most:

after his application to the Kelley School. Before his application, he was under a year's suspension; afterward, he was expelled, with a statement by the Dean that would make any other medical school reluctant to admit him and any hospital reluctant to employ him if he ultimately received a degree. Doe was allowed to communicate in writing with the Prior Misconduct Review Committee, but after that—nothing. The Committee denied Doe's application to study at the business school and sent a package of papers to Dean Hess at the medical school. Doe did not know that this had happened until he received the Dean's letter expelling him. We asked at oral argument whether Doe (and other similarly situated students) received either notice or an opportunity to comment under similar circumstances. The answer: an unequivocal "no." It is hard to see how this could satisfy even the minimal requirement of *Goss*.

According to the University, the absence of process is irrelevant because students lack a property interest in a medical education. The University is right that property interests depend on statutes and contracts that create legitimate claims of entitlement, see *Board of Regents v. Roth*, 408 U.S. 564 (1972), but wrong to think that property lies in specific procedural promises. Under the Supreme Court's positivist approach, statutes and contracts create legitimate claims of entitlement, while constitutional law identifies the process due. E.g., *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). Cf. *Olim v. Wakinekona*, 461 U.S. 238, 249–50 (1983) (state procedures do not define liberty interests). As far as we can see, Indiana University entitles medical students to finish their educations unless specified events happen—failure to pay tuition, poor grades, violence against other students, and similar matters. The University does not assert that Dean Hess had

authority to expel Doe for any reason Hess chose, such as wearing loud clothes or mocking the football team. Doe thus had a legitimate claim of entitlement to remain a student unless he transgressed a norm. That's a property interest in constitutional lingo and requires some kind of hearing.

One more issue needs discussion before we remand. We have so far referred to the plaintiff as "John Doe." That's how he referred to himself in the pleadings and briefs. But it is not his real name. The district court said that it permitted him "to proceed under a pseudonym to protect his identity." 2022 U.S. Dist. LEXIS 59743 *1 n.1. That's what a pseudonym does, but this effect is not a *justification*. The norm in federal litigation is that all parties' names are public. See, e.g., *Doe 3 v. Elmbrook School District*, 658 F.3d 710, 721–24 (7th Cir. 2011), adopted on this issue by *Doe v. Elmbrook School District*, 687 F.3d 840, 842–43 (7th Cir. 2012) (en banc); *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005); *Roe v. Dettelbach*, 59 F.4th 255, 259–60 (7th Cir. 2023). See also *Doe v. Doe*, 85 F.4th 206 (4th Cir. 2023) (same general approach in another circuit). Judicial proceedings are open to the public, which has an interest in knowing the who and the how about the behavior of both judges and those who call on the large subsidy of the legal system.

One justification for anonymity is youth. Fed. R. Civ. P. 5.2(a)(3) requires the use of initials rather than names for minors. Otherwise "the complaint must name all the parties". Fed. R. Civ. P. 10(a). Doe is well into his adult years (recall that the events in question occurred while he was a medical student). A substantial risk of harm—either physical harm or retaliation by third parties, beyond the reaction legitimately attached to the truth of events as determined in court—may justify anonymity. *Doe 3* discusses this consideration. But "we

have refused to allow plaintiffs to proceed anonymously merely to avoid embarrassment." *Roe v. Dettelbach*, 59 F.4th at 259, citing *Doe v. Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Doe does not contend that he is at risk of physical harm; his asserted interest lies in protecting his reputation—even though the University found that Doe committed physical violence against Roe.

Consider what happens if someone is charged with crime, as Doe could have been charged with assault and battery. Proceedings before a grand jury are secret, see Fed. R. Crim. P. 6(e)(2)(B), but every indicted defendant's name is open to the public, despite the reputational harm to a person who is presumed innocent. Someone charged with a felony may be shunned or encounter trouble finding a job, but a court would not call that "retaliation" that justifies anonymity. Knowing that a potential student or employee has been charged with a crime legitimately justifies steps for self-protection. Or suppose Roe had sued Doe for the tort of battery. Again his name would have been on the public record. Doe's own suit illustrates how litigation can harm reputations. In addition to the institutional defendants, the complaint names three natural persons, including Dean Hess. Doe wants to protect his own reputation but did not hesitate to expose Dean Hess to the reputational injury that would follow from a judicial conclusion that he violated Title IX or the Constitution.

Why should a plaintiff be able to shield himself from public knowledge of his acts when throwing a harsh light on identified defendants? If there should be a difference, it ought to run the other way—as plaintiffs enjoy an absolute privilege against claims of defamation for what they say in their complaints and briefs. *Restatement (Second) of Torts* §587. Why

should plaintiffs be free to inflict reputational harm while sheltering themselves from loss if it turns out that their charges are unfounded? Especially not when the defendants believe that the pseudonymous plaintiff already has used secrecy to attempt to deceive another entity (the Kelley School) about what happened. (We do not say that Dean Hess was right about this; the possibility of error is why the Constitution requires some kind of hearing.)

Our decisions, like those in other circuits, have afforded district judges discretion to permit pseudonymous litigation when the balance of harms justifies it. In this case a magistrate judge permitted Doe to keep his name out of the public eye even before the defendants had an opportunity to take a position. The magistrate judge's brief opinion mentions a multifactor approach drawn from opinions of a few district judges, an approach that has not been adopted by this circuit. For example, the first factor was whether the defendant is an educational institution. We don't see how this consideration is pertinent. Suits by or against educational institutions are litigated in the public view all the time. The magistrate judge also wrote that disclosure would reveal "information of the utmost intimacy," which is an odd way to describe the University's finding that Doe engaged in assault and battery. This suit is not about what happened during sexual relations. It presents a claim of sex *discrimination*, certainly, but the defendants rather than Doe are the accused discriminators. Federal courts adjudicate thousands of sex-discrimination suits annually without concealing the plaintiffs' names.

The magistrate judge found that Doe faces a risk of "stigmatization from the community and the public at large", yet this circuit has held that embarrassment does not justify

No. 22-1576 9

anonymity. The magistrate judge did *not* find that Doe faces a risk of physical harm or retaliation (and could not properly have done so without an evidentiary hearing). For his part, the district judge said only what we have already quoted: that pseudonyms enable anonymity. That will not do. "It is important that a reviewing court be confident that the [district] court actually engaged in the careful and demanding balancing of interests required in making this determination." *Doe 3*, 658 F.3d at 722. That cannot be said of the events in this case.

At oral argument we directed the parties to file supplemental briefs addressing the propriety of anonymity. Defendants contended Doe's name must be revealed. Doe, unsurprisingly, took the contrary position. His submission tells us that plaintiffs in Title IX suits regularly are allowed to conceal their identities. But the assertion "this is how things have been done" is not a justification for doing them that way. It says more about the litigation tactics used by plaintiffs' lawyers (such as inducing a magistrate judge to make a decision before defendants even have time to reply) than about legal entitlements. The principal appellate opinion that the magistrate judge cited, *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016), recognized that the plaintiff was using an alias but did not analyze the propriety of that step. The same can be said of *Doe v. Purdue University*, *supra*. Lots of other decisions are similar and do not create a Title IX easement across the norm of using litigants' names. (The statute itself does not provide for anonymous suits.)

Neither Doe nor the district court relied on 20 U.S.C. §1232g(b), which restricts institutions that receive federal funds from releasing educational records under certain circumstances. (Doe mentions §1232g but does not develop an

argument.) The statute does not apply directly; after all, Doe is not an educational institution and is free to disclose his own records. We need not and do not consider when, if ever, this statute may limit public access to students' identities—for example, whether it offers nonparties such as Roe greater protection than what is available to someone such as Doe who sets litigation in motion.

The district judge abused his discretion when permitting "John Doe" to conceal his name without finding that he is a minor, is at risk of physical harm, or faces improper retaliation (that is, private responses unjustified by the facts as determined in court). Title IX litigation is not an exception to the norm that adult litigants are identified by name.

But it does not follow that we should immediately put the real name in the public record. The magistrate judge's *ex parte* order allowed Doe to prosecute this suit in secret. Now that we have found the assurance to be an abuse of discretion, Doe is entitled to an opportunity to dismiss the suit under Fed. R. Civ. P. 41(a)(2). This is how we proceeded in *Doe v. Smith*, 429 F.3d at 710. Plaintiff may choose to withdraw the suit and keep his name secret, just as he could have withdrawn the suit had the magistrate judge ruled against him.

The judgment is vacated and the case remanded to the district court. If Doe elects to continue with the suit, his true name must be disclosed to the public, and the district court must decide what remedy is appropriate for Dean Hess's failure to allow Doe an opportunity to present his position before expelling him. If Doe elects not to reveal his name, the complaint must be dismissed. The district court then would need to decide, as Rule 41(a)(2) provides, whether the dismissal is with or without prejudice.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**CERTIFIED COPY**
A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

**FINAL JUDGMENT**

April 26, 2024

Before
FRANK H. EASTERBROOK, *Circuit Judge*
KENNETH F. RIPPLE, *Circuit Judge*
DIANE P. WOOD, *Circuit Judge*

| No. 22-1576 | JOHN DOE,<br>           Plaintiff - Appellant<br><br>v.<br><br>THE TRUSTEES OF INDIANA UNIVERSITY, et al.,<br>           Defendants - Appellees |
|---|---|
| **Originating Case Information:** ||
| District Court No: 1:20-cv-02006-JRS-MJD<br>Southern District of Indiana, Indianapolis Division<br>District Judge James R. Sweeney II ||

The judgment is **VACATED** and the case **REMANDED** to the district court. If Doe elects to continue with the suit, his true name must be disclosed to the public, and the district court must decide what remedy is appropriate for Dean Hess's failure to allow Doe an opportunity to present his position before expelling him. If Doe elects not to reveal his name, the complaint must be dismissed. The district court then would need to decide, as Rule 41(a)(2) provides, whether the dismissal is with or without prejudice. The above is in accordance with the decision of this court entered on this date. The parties should bear their own costs.

*[signature]*

Clerk of Court

form name: **c7_FinalJudgment**     (form ID: **132**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

May 20, 2024

To:  Roger A. G. Sharpe
     UNITED STATES DISTRICT COURT
     Southern District of Indiana
     United States Courthouse
     Indianapolis, IN 46204-0000

| | |
|---|---|
| No. 22-1576 | JOHN DOE,<br>        Plaintiff - Appellant<br><br>v.<br><br>TRUSTEES OF INDIANA UNIVERSITY, et al.,<br>        Defendants - Appellees |
| **Originating Case Information:** ||
| District Court No: 1:20-cv-02006-JRS-MJD<br>Southern District of Indiana, Indianapolis Division<br>District Judge James R. Sweeney, II ||

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                              No record to be returned

form name: **c7_Mandate**   (form ID: **135**)