IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Phillip Martoccia, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| vs. | ) Cause No. 1:20-cv-02006-JRS-MJD |
| | ) |
| The Trustees of Indiana University, | ) |
| Indiana University School of Medicine, | ) |
| Indiana University Purdue University- | ) |
| Indianapolis, Indiana University Kelley | ) |
| School of Business, Gregory Kuester, in his | ) |
| official and individual capacity, Bradley | ) |
| Allen, in his official and individual capacity, | ) |
| and Jay Hess, in his official and individual | ) |
| capacity. | ) |
| | ) |
| *Defendants.* | ) |

**DEFENDANTS' LOCAL RULE 16.2 STATEMENT OF POSITION**

Defendants, by counsel, pursuant to S.D. Local Rule 16.2, respectfully submit the following statement of their position in this case and move this Court to take the actions suggested below.

I. **Procedural History and Context**

On March 31, 2022, this Court entered its Order granting Defendants' Motion for Summary Judgment ("Summary Judgment Order"). Dkt. 154. After an appeal initiated by Plaintiff Phillip Martoccia on April 26, 2024, the Seventh Circuit vacated the Summary Judgment Order on a narrow due process ground and remanded the case for this Court

1

to "decide what remedy is appropriate for Dean Hess's failure to allow [Martoccia] to present his position before expelling him." Dkt. 172, p. 10. The context for that decision is a record showing that at every level of the process that was due for Martoccia's dating violence toward another medical student, the recommendation was *expulsion*. Dean Hess exercised his discretion to lessen Martoccia's sanction to a two-year suspension, with the *opportunity* to reapply to the IUSM provided he behaved as a "model citizen" in the interim. When Martoccia compounded his offenses by falsely stating in his application to the Kelley School of Business that Dean Hess had "exonerated" him of any wrongdoing (and thus failed to meet the condition of his suspension), Dean Hess expelled him for this academic misconduct. It was only at this last stage that the Seventh Circuit held more process was due.

## II.     Defendants' Position

Given the Seventh Circuit's finding of a procedural due process violation, the appropriate remedy is to provide Martoccia with an opportunity to be heard by a neutral panel regarding the allegations of his academic dishonesty. This will allow him the opportunity to respond to the assertion that he made written misrepresentations in his MBA application. Injunctive relief requiring Martoccia's automatic reinstatement at IUSM is unwarranted because he already had been properly suspended for dating violence at the time of his expulsion, and his suspension terms required him to apply for reinstatement. Regarding any request for economic damages, a procedural due process

violation, without proof of actual injury, permits only nominal damages. Finally, Martoccia is not entitled to relief under Rule 54(d) or 42 U.S.C. § 1988.

### A. <u>The appropriate remedy is additional process.</u>

The "typical remedy for a violation of due process in the university disciplinary context is more process." *Doe v. The Rector and Visitors of George Mason University*, 179 F.Supp.3d 583, 588 (E.D. Va 2016); *see also e.g. John Doe v. Brown University*, 210 F.Supp.3d 310, 313 (D.R.I. 2016)(plaintiff entitled to a new disciplinary hearing consistent with procedural due process); *Huntsinger v. Idaho State Univ.*, No. 4:14-CV-00237-BLW, 2014 WL 5305573, at *2-3 (D. Idaho Oct. 15, 2014)(new hearing granted when students were given failing grades for cheating without an opportunity to respond); *Boyd v. State Univ. of New York at Cortland*, 110 A.D.3d 1174, 1176 (N.Y. App. Div. 2013) (remanding a harassment case for a hearing panel to provide factual findings and allow the student to challenge the determination); *Kalinsky v. State Univ. of New York at Binghamton*, 161 A.D.2d 1006, 1008 (N.Y. App. Div. 1990) (concluding that a student accused of plagiarism but denied due process is entitled to a new hearing); *Jones v. Snead*, 431 F.2d 1115, 1117 (8th Cir. 1970)("any determination that the students' college hearing violated due process will not necessarily mandate reinstatement, only a new hearing").

Defendants have not located Seventh Circuit authority specifically addressing remedies for procedural due process violations in university discipline matters. In other contexts, the Seventh Circuit has affirmed that a new hearing was the appropriate remedy

for a procedural due process violation. For example, in *Dargis v. Sheahan*, the Seventh Circuit held that the correct remedy for an employee suspended without proper process was a hearing to determine whether the suspension was justified. 526 F.3d 981, 989 (7th Cir. 2008). The Seventh Circuit reasoned, "Procedural due process rules are meant to protect persons not from the deprivation, but from the *mistaken or unjustified* deprivation of life, liberty, or property." *Id.* (quoting *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)(emphasis added). The Seventh Circuit further noted that if the district court "was the entity to consider whether [plaintiff's] leave was justified, it would be placed in the incongruous position of considering whether to award compensation . . . for a job" he had been appropriately placed on unpaid leave from. *Id.* at 990.

In *Brookhart v. Illinois State Bd. of Educ.*, 697 F.2d 179, 184 (7th Cir. 1983), the plaintiffs' procedural due process rights were violated when a school district provided inadequate notice of a competency test requirement necessary for graduation. Regarding the remedy, the plaintiffs wanted the school district to provide them with diplomas; however, the Seventh Circuit held that to do so "would be putting [the plaintiffs] in a better position than they would have been in had there been no due process violation." *Id.* at 188. "Traditionally, procedural due process remedies provide plaintiffs only with an opportunity to prove their eligibility for a benefit, rather than providing the benefit itself." *Id.* "Awarding diplomas here would amount to awarding the benefit itself . . . the due process right is not a right to a diploma . . . but rather a right to adequate notice in

order to prepare for the new requirement." *Id.* "Thus, the appropriate remedy for the denial of this right is an extended period for preparation." *Id.*

### B. No additional relief is warranted for Martoccia.

Generally speaking, where a plaintiff would have suffered the same fate had the required hearing been held, he is not entitled to recover damages caused by the suspension. *Dargis*, 526 F.3d at 989. *See also Carey*, 435 U.S. at 260, 98 S.Ct. 1042 (agreeing with the court of appeals that to award damages for injuries caused by a justified suspension imposed without a hearing would amount to a "windfall"). Put another way, to recover damages exceeding a nominal sum, a plaintiff must show that he suffered compensable harm traceable only to the denial of the hearing. *Manley v. Law*, 889 F.3d 885, 892 (7th Cir. 2018); see also *Haidak v. University of Massachusetts-Amherst*, 933 F.3d 56, 74 (1st Cir. 2019) (A violation of procedural due process rights, even in the absence of actual injury, justifies a finding in favor of the student and an award of nominal damages); *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)("Because the right to procedural due process is 'absolute' . . . denial of procedural due process should be actionable for nominal damages without proof of actual injury."); *Farrar v. Hobby*, 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed2d 49 (1992)("*Carey* obligates a court to award nominal damages when a plaintiff establishes the violation of his right to procedure due process but cannot prove actual injury.")

### a. **Martoccia is not entitled to automatic reinstatement.**

The Seventh Circuit held that Martoccia's procedural due process rights were violated when Dean Hess expelled him without "some kind of hearing." The Seventh Circuit found no fault, however, in the underlying disciplinary process where Martoccia was found responsible for dating violence and, facing an administratively proper recommendation of expulsion, Dean Hess instead elected to suspend him for one year from IUPUI and then an additional year from IUSM. Accordingly, Martoccia was properly suspended from IUPUI and IUSM at the time of the expulsion. Martoccia's status is that of a suspended IUSM student who may "apply for reinstatement." *See The Rector and Visitors of George Mason University*, 179 F.Supp.3d at 587, fn. 8 (If plaintiff was not in good standing at the time his procedural due process rights were violated, he should be reinstated to whatever status he held prior to the constitutional violation). Of course, any such application would have to take into account the misstatements he made on his Kelley School application.

Because Martoccia's reinstatement to IUSM was not automatic, there is no basis to order IUSM to restore Martoccia as an IUSM student. Doing so would put Martoccia in a "better position" than he would have been in had there been no due process violation and would result in a "windfall" for Martoccia. *Brookhart*, 697 F.2d at 188; *Dargis*, 526 F.3d at 989.

Additionally, although Martoccia is guaranteed a "constitutionally fair proceeding", IUSM's last-step constitutional violation does not require Martoccia's automatic reentry. *Schiavo*, 403 F.3d at 1295; *see also Doe v. Rector and Visitors of George Mason University*, 149 F.Supp. 3d 602, 624 (E.D. Va. 2016) ("recognition that defendants did not afford constitutionally adequate process to plaintiff does not necessarily require turning a blind eye. . . that plaintiff poses a threat . . . based on the totality of his actions and disciplinary violations.")

Martoccia's eligibility to apply for reinstatement may be determined now, consistent with the terms of his previous suspension. However, if, through proper process, expulsion from IUSM is deemed appropriate, there would be no ground for Martoccia to seek reinstatement, rendering his request moot.

### b. <u>Martoccia is entitled to nominal damages only.</u>

Generally speaking, where a plaintiff would have suffered the same fate had the required hearing been held, he is not entitled to recover damages caused by the suspension. *Dargis*, 526 F.3d at 989. *See also Carey*, 435 U.S. at 260, 98 S.Ct. 1042 (agreeing with the court of appeals that to award damages for injuries caused by a justified suspension imposed without a hearing would amount to a windfall). Put another way, to recover damages exceeding a nominal sum, a plaintiff must show that he suffered compensable harm traceable only to the denial of the hearing. *Manley v. Law*, 889 F.3d 885, 892 (7th Cir. 2018); see also *Haidak v. University of Massachusetts-Amherst*, 933 F.3d 56,

74 (1st Cir. 2019) (A violation of procedural due process rights, even in the absence of actual injury, justifies a finding in favor of the student and an award of nominal damages); *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)("Because the right to procedural due process is 'absolute' . . . denial of procedural due process should be actionable for nominal damages without proof of actual injury."); *Farrar v. Hobby*, 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed2d 49 (1992)("*Carey* obligates a court to award nominal damages when a plaintiff establishes the violation of his right to procedure due process but cannot prove actual injury.")

"By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights." *Carey*, 435 U.S. at 266, 98 S.Ct. at 1066.

The Seventh Circuit has noted that "nominal damages" "rarely exceed $2 and more commonly are as in this case only $1" in §1983 cases. *Moore v. Liszewski*, 838 F.3d 877, 878 (7th Cir. 2016). In *Farrar v. Cain* (the underlying district case to Farrar v. Hobby), the Fifth Circuit ordered the district court to award nominal damages "not to exceed $1" (*Farrar v. Cain*, 756 F.2d 1148, 1152 (5th Cir. 1985)).

If Martoccia is expelled from IUSM for his academic dishonesty after the appropriate process, he would not be entitled to further compensatory damages. *Carey*, 435 U.S. at 266, 98 S.Ct 1042; *Farrar*, 506 U.S. at 112, 113 S.Ct. 566.; *Dargis*, 526 F.3d at 989. If Martoccia is not expelled, he may be entitled to further compensatory damages, but only if he can demonstrate that he suffered compensable harm traceable to the denial of process. *Manley v. Law*, 889 F.3d 885, 892 (7th Cir. 2018).

### c. Martoccia is not entitled to costs pursuant to Federal Rule of Civil Procedure 54(d).

Rule 54(d) of the Federal Rules of Civil Procedure provides "costs – other than attorney's fees – should be allowed to the prevailing party." Courts apply a presumption in favor of awarding costs to a party that is deemed to have *prevailed*. *See Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir.2003). However, this presumption can be overcome in a "mixed result" or "mixed outcome" case, where each side prevails in some respects and not others and where the district court has wide discretion to deny costs to both sides. *See Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir.1999) ("courts have especially broad discretion to award or deny costs in mixed result cases"); *see also FASA Corp. v. Playmates Toys, Inc.*, 108 F.3d 140, 144 (7th Cir.1997) ("costs ... are normally awarded to the prevailing party as a matter of course, unless ... the case has a mixed outcome"); *Testa v. Vill. of Mundelein*, 89 F.3d 443, 447 (7th Cir.1996) ("Considering the mixed outcome of the civil rights and malicious prosecution claims, the decision requiring each party to

bear its own costs is within [the district court's] discretion."); *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 46 (1st Cir.2010) ("In situations in which one party prevails on some claims and the other party prevails on other claims, the litigants are commonly ordered to bear their own costs."); *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir.1996) ("In the event of a mixed judgment, however, it is within the discretion of a district court to require each party to bear its own costs.").

The Seventh Circuit narrowly found that Martoccia's expulsion violated his due process rights. No fault was found in the underlying disciplinary process where Martoccia was found responsible for dating violence, nor was any due process right violated by Martoccia's suspension. Martoccia did not "prevail" on a substantial part of the litigation and should not be awarded costs. *See, e.g., Richardson v. City of Chicago*, 2013 WL 2451107, at *7 (N.D. Ill. June 5, 2013), aff'd sub nom, 740 F.3d 1099 (7th Cir. 2014)("For purposes of Rule 54(d), the 'prevailing party' is the party who prevails 'as to the substantial part of the litigation.'"); *Smart v. Local 702 Intern. Broth. of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009)("A party prevails for purposes of Rule 54(d) when a final judgment awards it substantial relief.").

Accordingly, this Court should not award Martoccia any costs pursuant to Rule 54(d).

### d. **Martoccia is not entitled to attorneys' fees under § 1988.**

Under 42 U.S.C. § 1988(b), "the court, *in its discretion*, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in suits brought pursuant to 42 U.S.C. § 1983. (emphasis added). The Seventh Circuit follows the three-part test from Justice O'Connor's concurrence in *Farrar* when assessing fee awards. *Aponte v. City of Chicago*, 728 F.3d 724, 727 (7th Cir. 2013); *Briggs v. Marshall*, 93 F.3d 355, 361 (7th Cir.1996). Courts consider "(1) the difference between the amount recovered and the damages sought, (2) the significance of the issue on which the plaintiff prevailed relative to the issues litigate, and (3) whether the case accomplished some public goal." *Aponte v. City of Chicago*, 728 F.3d at 727; *Farrar* at 121–22, 113 S.Ct. 566 (O'Connor, J., concurring); *Briggs v. Marshall*, 93 F.3d 355, 361 (7th Cir.1996).

A district court is well within its discretion to conclude that the disparity between the amount sought and the amount received weigh against attorney fees. *See Hyde v. Small*, 123 F.3d 583, 584 (7th Cir. 1997)(where a plaintiff wins only nominal damages, a reasonable fee is "especially likely to be zero" unless the case establishes important precedent or awards equitable relief). *See also e.g.*, *Mounson v. Moore*, 2004 WL 2496650, at *1 (7th Cir. 2004)(in a situation where a plaintiff receives a nominal award only when he sought more in compensatory damages a "district court should exercise its discretion to award no [attorneys'] fees").

11

Martoccia's demand throughout this case has been for far more than nominal damages, which weighs strongly against an award of attorneys' fees under § 1988. *See Marshall*, 93 F.3d at 361 ("the most significant of the three factors is the difference between the judgment recovered and the recovery sought"). The legal significance of the issue litigated may weigh modestly in favor of fees given Martoccia's success on his claim; however, this factor is the least significant of the three. *Maul v. Constan*, 23 F.3d 143, 145 (7th Cir. 1994).

Finally, Martoccia's victory served little or no public purpose because he did not establish anything more than that he was not afforded an opportunity to "explain" his written misstatements. *Id.* at 146-147; *see also Marshall*, 93 F.3d at 361 (where plaintiff received nominal damages only, he was not entitled to attorneys' fees). The denial of attorneys' fees under § 1988 where nominal relief is gained is not to "denigrate the importance of the plaintiffs' vindication of their constitutional rights" but rather "given that §1983 claims necessarily involve the violation of a right, privilege or immunity, attorney's fees are appropriate after *Farrar only when* the plaintiff's victory entails something more than a determination that a constitutional guarantee was infringed." *Id.*

### C. **IUSM has available mechanisms to provide a neutral hearing.**

IUSM's Student Promotions Committee ("SPC") is tasked with ensuring IUSM students meet the high standards IUSM has set for those seeking to become medical doctors. *See attached Exhibit A, IUSM Policy for Promotion, Dismissal, Withdrawal, and*

12

*Suspension.* This involves addressing both academic and non-academic student issues. SPC is comprised of IUSM students and faculty members who have substantial experience conducting impartial hearings and recommending whether students should be allowed to continue at IUSM.

A hearing before the SPC would be a suitable forum to evaluate the allegation and determine any appropriate discipline. No member of the assigned SPC panel would have any association with this litigation. In case of an appeal, to avoid the ordinary path of review by Dean Allen and Dean Hess, IUSM would seek review by available Deans of other Indiana University health-related schools, such as the Schools of Dentistry, Nursing, Public Health, or another health professional program that shares similar values. Having medical doctors serve as the appellate authority is crucial, as honesty and professionalism are fundamental to the educational aims of becoming a physician.

Administrators are presumed to be honest, impartial, and "capable of judging a particular controversy fairly based on its own circumstances. *Doe v. Purdue University*, 928 F.3d 652, 664 (7th Cir. 2019)(quoting *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 675 (7th Cir. 2016). To rebut the presumption, the plaintiff must "lay a specific foundation of prejudice or prejudgment, such that the probability of actual bias is too high to be constitutionally tolerable." *Id.* This burden is "heavy indeed," typically requiring evidence that the "adjudicator had a pecuniary interest in the outcome of the case, or that he was previously the target of the plaintiff's abuse or criticism." *Id.*

13

There is "no reason to doubt" that other proper representatives of IUSM can provide a fair process.  See *Doe v. the Rector and Visitors of George Mason University*, 179 F.Supp.3d 583, 590 (E.D. Va 2016)("no reason to doubt that other members of the Office of Student Conduct can provide a fair hearing for plaintiff"); *Boston v. Webb*, 783 F.2d 1163, 1166 (4th Cir. 1986)(noting the well-settled presumption of regularity by government officials).

### III. <u>Conclusion</u>

For the foregoing reasons, Defendants request that this Court (a) direct IUSM to provide Martoccia a hearing before the IUSM Student Promotions Committee to evaluate the academic dishonesty allegation and, if called for, determine appropriate discipline, (b) deny any additional relief for Martoccia other than nominal damages, and (c) grant all other just and proper relief for defendants.

    Respectfully submitted,

    /s/ Finis Tatum IV
    Wayne C. Turner
    Finis Tatum IV
    Scott E. Murray
    Janet Lynn Thompson
    HOOVER HULL TURNER LLP
    111 Monument Circle, Suite 4400
    Indianapolis, IN 46204
    Telephone: (317) 822-4400
    Facsimile: (317) 822-0234

    wturner@hooverhullturner.com
    ftatum@hooverhullturner.com
    smurray@hooverhullturner.com
    jthompson@hooverhullturner.com

    *Counsel for Defendants*