UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PHILIP MARTOCCIA,<br><br>Plaintiff,<br><br>v.<br><br>THE TRUSTEES OF INDIANA UNIVERSITY,<br>INDIANA UNIVERSITY SCHOOL OF MEDICINE,<br>INDIANA UNIVERSITY KELLEY SCHOOL OF BUSINESS,<br>GREGORY KUESTER in his official and individual capacity,<br>BRADLEY ALLEN in his official and individual capacity,<br>JAY HESS in his official and individual capacity,<br>INDIANA UNIVERSITY PURDUE UNIVERSITY INDIANAPOLIS, INDIANA,<br><br>Defendants. | ) | No. 1:20-cv-02006-JRS-MG |

**ORDER CONCERNING REMEDY**

This case is back on remand from the Seventh Circuit. Initially, this Court granted summary judgment to Defendants on Martoccia's Title IX and procedural due process claims. On appeal, the Seventh Circuit reversed the procedural due process holding—deciding that the Constitution entitled Martoccia to additional process before he was expelled. The Parties have filed Statements of Position under Local Rule 16.2 to indicate what action they believe the Court should now take concerning remedy.

The Court finds that, at this stage, the appropriate remedy is for Defendants to give Martoccia the process he is due: a hearing on the allegations of dishonesty. Martoccia is also entitled to nominal damages, though those will be awarded later. Whether Martoccia is entitled to further relief will depend on the outcome of the hearing, and whether his expulsion turns out to have been justified or unjustified.

## I. Background

Martoccia was a student at Indiana University School of Medicine ("Medical School") when he violated the School's Student Sexual Misconduct Policy by committing dating violence. (SJ Order 4, ECF No. 154.) He was subsequently placed on a one-year suspension from the school. (*Id.*) The Student Promotions Committee then met with Martoccia, and afterward, recommended that he be dismissed from the Medical School. (*Id.*) Martoccia appealed the Committee's recommendation, and Dean Hess granted Martoccia's appeal, (*id.*), imposing instead an additional year of suspension, (Hess Initial Decision Letter, ECF No. 76-16). Dean Hess's decision also instructed Martoccia to comply with all "academic" and "personal codes of conduct" during his suspension or else his return to the Medical School might be jeopardized. (SJ Order 5, ECF No. 154.)

A few months later, Martoccia misrepresented in his application to the University's MBA program that Dean Hess's grant of his appeal was a full exoneration of the sexual misconduct accusations. (SJ Order 5, ECF No. 154.) That statement triggered review by the Prior Misconduct Review Committee, and in response to its follow-up, Martoccia doubled down on his misrepresentations. (*Id.*)

When that Review Committee concluded Martoccia had lied, it notified Dean Hess. (*Id.*) Without giving Martoccia a chance to respond to those conclusions, Dean Hess dismissed him from the Medical School effective immediately. (*See id.*)

Martoccia filed suit—alleging procedural due process and Title IX violations. (*See* SJ Order 8–9, 19–20, ECF No. 154.) About a year into the case, the due process claims against a handful of defendants were dismissed. (*See id.* at 19; MTD Order, ECF No. 140.)

The remaining claims—due process and Title IX—were disposed of on summary judgment, which was granted in Defendants' favor. (SJ Order 9–27, ECF No. 154.) On the Title IX claim, the Court found that Martoccia failed to show that any differences in treatment in the Title IX process constituted discrimination on the basis of his sex. (*Id.* at 9–19.) On Martoccia's due process claims, the Court found that Martoccia's dismissal was an academic dismissal, requiring a lesser amount of process—and that Dean Hess's notification of dismissal met the constitutional floor. (*Id.* at 19–27.)

Martoccia then successfully appealed part of the grant of summary judgment. *See Doe v. Trs. of In. Univ.*, 101 F.4th 485, 490 (7th Cir.), *cert. denied sub nom. Doe v. The Trs. of In. Univ.*, 145 S. Ct. 546 (2024). The Seventh Circuit acknowledged that Martoccia received "lots of process" before his dismissal. *Id.* But it held that he did not have "an opportunity to be heard when it mattered most: after his application to the [Business] School." *Id.* Because "Indiana University entitles medical students to finish their educations unless specified events happen," Martoccia "had a legitimate

claim of entitlement to remain a student unless he transgressed a norm." *Id.* at 491. And that entitlement constituted "a property interest . . . [that] require[d] some kind of hearing." *Id.*

The Seventh Circuit thus affirmed the Title IX holding but reversed the procedural due process holding. *Doe*, 101 F.4th at 490, 491. It vacated the summary judgment order and remanded—instructing this Court to "decide what remedy is appropriate" for the procedural due process violation arising from "Dean Hess's failure to allow [Martoccia] an opportunity to present his position before expelling him." *Id.* at 493.

The Parties have filed Statements of Position under Local Rule 16.2, indicating what action they believe the Court should now take in the case.

## II. Discussion

The Seventh Circuit found that a procedural due process violation occurred, but the parties disagree on what comes next.

Martoccia doubles down on the remedies requested in his Complaint. (*See* Pl.'s Br. 1–3, ECF No. 192.) First, Martoccia argues there should be a jury trial to determine the damages to which he is entitled because of the due process violation—including damages based on his emotional, psychological, reputational, economic, educational, and career harm. (*Id.* at 1–2; *see* Am. Compl. 82–83, ECF No. 8.) Martoccia also argues that the Court should issue the appropriate injunctive relief, (Pl.'s Br. 3, ECF No. 192), including "awarding [him] an injunction vacating [his] disciplinary findings and decision, granting expungement of the disciplinary records

at [issue] in this [case] from [his] school records at the University, and [ordering his] immediate reinstatement to IUSM," (Am. Compl. 83, ECF No. 8). Finally, Martoccia claims the Court should award him attorney's fees because he is the prevailing party. (Pl.'s Br. 3, ECF No. 192.)

Defendants argue that the appropriate remedy for the due process violation is giving Martoccia the process he was due. (Def.'s Br. 2, ECF No. 191.) They further detail how they would ensure this hearing would be impartial as required by the Due Process Clause. (*Id.* at 2, 12–14.) Defendants argue that skipping the hearing and instead granting Martoccia "[i]njunctive relief requiring [his] automatic reinstatement" would be inappropriate, because Martoccia was "properly suspended for dating violence at the time of his expulsion[] and his suspension terms required him to apply for reinstatement." (*Id.* at 2.) Thus, they contend that granting Martoccia automatic reinstatement would "result in a 'windfall'"—putting him in a better position than he would be absent the constitutional violation. (*Id.* at 2, 6 (quoting *Dargis v. Sheahan*, 526 F.3d 981, 989 (7th Cir. 2008).) Defendants further argue that at this stage, Martoccia is only entitled to nominal damages; additional damages would be available only if the hearing did *not* result in Martoccia's expulsion, and he could show a compensable harm traceable only to the denial of due process. (*Id.* at 9.) Finally, Defendants claim that Martoccia's narrow victory on the procedural due process claim does not entitle him to prevailing party costs or attorney's fees. (*Id.* at 9–12.)

The Court agrees with Defendants, that at this stage, the only appropriate remedy is for Martoccia to receive the process he was due: "an opportunity to be heard by a neutral panel regarding the allegations of his academic dishonesty." (Def.'s Br. 2, ECF No. 191.) Martoccia is also entitled to, at least, nominal damages, but any appropriate damages will be determined later, following the full resolution of the proceeding before the committee and any subsequent appeal.

"Traditionally, procedural due process remedies provide plaintiffs only with an opportunity to prove their eligibility for a benefit, rather than providing the benefit itself." *Brookhart v. Ill. State Bd. of Educ.*, 697 F.2d 179, 188 (7th Cir. 1983). The "Due Process Clause imposes basic procedural obligations on the government—in most cases, prior notice and a meaningful opportunity to be heard—before it deprives a person of life, liberty, or property." *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018). Crucially, however, the Clause protects individuals "not from [suffering any] deprivation," "but from [suffering] the *mistaken* or *unjustified* deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978) (emphasis added).

To determine whether a plaintiff's deprivation was mistaken, he must first be given the process he was due. *See Dargis*, 526 F.3d at 989 (citing *Carey*, 435 U.S. at 260). If a hearing is held and reveals that the suspension or other state action turned out to be "justified," *Carey*, 435 U.S. at 266–67, meaning "a plaintiff would have suffered the same fate had the required hearing been [timely] held," he is entitled to nominal damages alone, *Dargis*, 526 F.3d at 989 (citing *Carey*, 435 U.S. at 260). In other words, "[t]o recover damages exceeding a nominal sum, . . . [the plaintiff must]

show that they suffered compensable harm traceable only to the denial of a hearing—that is, to the due process violation itself—and not traceable to justified suspension[]." *Manley*, 889 F.3d at 892 (citing *Carey*, 435 U.S. at 263); *see Alston v. King*, 157 F.3d 1113, 1117–18 (7th Cir. 1998) (holding damages should have been tied to the denial of a pre-termination hearing rather than termination of employment). Nominal damages are typically only $1. *Moore v. Liszewski*, 838 F.3d 877, 878 (7th Cir. 2016). If, on the other hand, the hearing reveals the initial state action was unjustified, *see Dargis*, 526 F.3d at 989, then the plaintiff suffered "actual injury" from the due process violation, *Carey*, 435 U.S. at 266, and may receive damages to reflect that injury.

Here, the first step to remedying Martoccia's due process violation is to give him a hearing. The Seventh Circuit held that Martoccia's due process rights were violated when he was expelled without a hearing on the allegations of dishonesty in his Business School application. *Doe*, 101 F.4th at 490. Giving Martoccia a hearing would be a "remedy . . . appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 49–50 (1984) (holding, in the Sixth Amendment context, that the remedy for an unconstitutional closed-to-the-public suppression hearing was to hold a new, public suppression hearing that conformed to constitutional standards–not automatically grant a new trial); *United States v. All Assets & Equip. of W. Side Bldg. Corp.*, 58 F.3d 1181, 1193 (7th Cir. 1995) ("It is the responsibility of the courts to construct a remedy for a constitutional violation that is tailored to the injury caused by the violation. (citing *Milliken v. Bradley*, 418 U.S. 717, 744 (1974)). Consistent with the principle

that a discrete constitutional injury should be addressed with a closely tailored remedy, other courts have found that the "typical remedy for a violation of due process in the university disciplinary context is more process." *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 588 (E.D. Va. 2016); *see John Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 313 (D.R.I. 2016) (granting plaintiff a new hearing that met procedural due process standards). Thus, granting Martoccia a new hearing that meets constitutional requirements is the first step to remedying his procedural due process injury.

A hearing will also ensure that the remedy Martoccia receives makes him whole but does not result in a windfall. *See Dargis*, 526 F.3d at 989.

On damages, if the Medical School holds the hearing and decides that Martoccia's expulsion was *not* "justified," *Carey*, 435 U.S. at 267, then he may be able to show he is entitled to damages resulting from his undue expulsion. If, on the other hand, the School decides after a hearing that Martoccia should still be expelled, then he could recover more than nominal damages only if he can show "compensable harm traceable only to the denial of a hearing . . . and not traceable to [his] justified suspension[]." *Manley*, 889 F.3d at 892. Thus, it is appropriate for the Court to "direct[] the [Medical School] to conduct a hearing instead of proceeding to trial on damages." *Dargis*, 526 F.3d at 989.

A hearing is also necessary before further injunctive relief could be warranted. At the time Martoccia was expelled, he was already suspended, his reinstatement to the Medical School was not guaranteed, and his disciplinary records regarding the sexual

misconduct were already settled. (SJ Order 4–5, ECF No. 154; Hess Initial Decision Letter, ECF No. 76-16.) The injunctive relief that Martoccia seeks—"vacating [his] disciplinary findings and decision, granting expungement of the disciplinary records, . . , and immediate[ly] reinstat[ing]" him to the Medical School, (Am. Compl. 83, ECF No. 8)—would make it as if he had never been disciplined for sexual misconduct or investigated for dishonesty. But a remedy for Martoccia's constitutional injury cannot put him "in a better position than [he] would have been in had there been no due process violation." *Brookhart*, 697 F.2d at 188. So a hearing must take place before the Court can determine what, if any, injunctive relief is proper. And whatever form injunctive relief may take, it will rectify Martoccia's constitutional injury—but not put him in a better position than before the due process violation.

The Court is also mindful that granting the requested relief here could, practically speaking, nullify or violate the Seventh Circuit's Title IX holding. When this Court granted summary judgment, it held that nothing about the Title IX disciplinary process subjected Martoccia to discrimination on the basis of sex. (SJ Order 8–19, ECF No. 154.) On appeal, the Seventh Circuit agreed. *Doe*, 101 F.4th at 490. Granting Martoccia the relief he asks for—namely, automatic reinstatement and expungement of his records with respect to the Title IX findings—would be overbroad because it would functionally give him a Title IX remedy without a Title IX violation. Such remedies would thus run counter to the Seventh Circuit's affirmance that no Title IX violation occurred.

The Court has authority to grant a new hearing even though Martoccia has not requested this relief. (*See* Pl.'s Br. 1–3, ECF No. 192; Am. Compl. 82–83, ECF No. 8.) The Federal Rules enable the Court to grant all "relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c); *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002). As shown above, a hearing is the only relief (aside from nominal damages) to which Martoccia is presently entitled. And Defendants will not be "improperly [or] substantially prejudiced" by this relief, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424 (1975), as a hearing is the relief they have argued is proper.

Defendants, not the Court, will execute Martoccia's new hearing and decide whether he should be expelled. The School has a process for reviewing allegations of misconduct and determining the appropriate consequence. (*See* ECF No. 191-1.) This same process was used for Martoccia's earlier hearings regarding dating violence. Defendants, thus, can determine "better [than the Court] . . . whether [Martoccia's expulsion] . . . was justified." *Dargis*, 526 F.3d at 990.

Of course, Defendants must ensure that Martoccia's hearing meets procedural due process requirements in substance, not just in form. "To satisfy the Due Process Clause, 'a hearing must be a real one, not a sham or pretense.'" *Doe v. Purdue Univ.*, 928 F.3d 652, 663 (7th Cir. 2019) (citing *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 629 (7th Cir. 2016)). That said, "administrators are [presumed to be] honest and impartial," and "the burden of rebutt[ing that presumption] is heavy." *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 675 (7th Cir. 2016). Defendants have laid

out some ways they will ensure the hearing meets constitutional requirements. (Def.'s Br. 12–14, ECF No. 191.) They have stated that "[n]o member of the assigned [Student Promotions Committee] panel would have any association with this litigation," and "[i]n case of an appeal, to avoid the ordinary path of review by Dean Allen and Dean Hess, [the Medical School] would seek review by available Deans of other Indiana University health-related schools." (*Id.* at 13.) All this shows that Defendants are contemplating how to ensure Martoccia's hearing meets constitutional standards, and thus remedies the violation of his due process rights.

The Parties also argue about how costs and attorney's fees should be awarded—but, as noted, determinations on those issues will come later. Martoccia is correct that a "plaintiff who wins nominal damages is a prevailing party under § 1988" such that they can receive attorney's fees. *Farrar v. Hobby*, 506 U.S. 103, 112 (1992). But Defendants are also correct that the Court has "especially broad discretion to award or deny costs in mixed result cases, including cases in which liability was established but recovery was nominal relative to what was sought." *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999) (citations omitted). Here too, the Court cannot decide how fees should be awarded without first seeing how the remaining remedies pan out. Determinations about what costs are appropriate will depend on whether Martoccia's expulsion turns out to be justified, and whether he can then show that additional damages beyond nominal damages or injunctive relief are proper.

* * *

Because Martoccia's procedural due process rights were violated, he is entitled to a hearing and nominal damages. Whether he is entitled to any more than that will depend on the final result of the hearing.

## III. Conclusion

For the foregoing reasons, the Court **directs Defendants to give Martoccia a hearing** on the allegations of dishonesty, including a chance to "present his side of the story" regarding those allegations. *Goss v. Lopez*, 419 U.S. 565, 581 (1975). Defendants should ensure this hearing meets the constitutional floor set by the Due Process Clause.

The Court **directs Defendants to hold this hearing within 60 days**. If Martoccia appeals the Committee's decision, **Defendants should resolve the appeal within 30 days**. The Court also directs the parties to **file status reports within 15 days of the complete resolution of the hearing and appeal process**, if an appeal takes place.

**SO ORDERED.**

Date: 11/13/2026

James R. Sweeney II

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution by CM/ECF to registered counsel of record